ACKER v. WEADEL.

1. IMPROVEMENTS—EQUITY MAY AWARD LIEN FOR IMPROVEMENTS.
A court of equity has power to declare an equitable lien
for the value of improvements made in good faith by an
innocent party in possession of land under a mistaken
claim of ownership.[1]

2. SAME—PARTY INVOKING EQUITY OPENS DOOR FOR APPLICATION
OF EQUITABLE PRINCIPLES.
Plaintiffs who invoked equity against defendants in pos-
session of land under a mistaken claim of ownership
opened the way for the latter to have their rights deter-
mined on equitable principles, and thus be compensated
for improvements made in good faith.[2]

3. SAME—DAMAGES—MEASURE OF DAMAGES IS INCREASED VALUE.
The amount recoverable for improvements is not to be
measured by the cost thereof, but by the resulting in-
creased value of the property.[3]

Appeal from Isabella; Hart (Ray), J. Submitted
July 13, 1926. (Docket No. 145.) Decided October
4, 1926. Rehearing denied January 3, 1927.

Bill by William Matier, administrator of the estates
of Amos Wilt, deceased, and Emily J. Wilt, deceased,
against Emma Weadel and others, heirs at law of
Amos and Emily J. Wilt, to determine the legal status
of said estates. The bill was dismissed as to plain-
tiff with leave to defendants to interplead. Defend-
ant Zelda Acker and others, heirs of Emma J. Wilt,
interpleaded and filed a cross-bill against Emma
Weadel and others to quiet title to land. From a de-
cree allowing an amount for improvements, cross-
plaintiffs appeal. Modified and affirmed.

[1]Improvements, 31 C. J. § 64; [2]Equity, 21 C. J. § 127; [3]Im-
provements, 31 C. J. § 51; 14 R. C. L. 22; 3 R. C. L. Supp. 155.

*Frank M. Burwash,* for appellants.

*F. H. Dusenbury* and *Virgil W. McClintic,* for appellees.

STEERE, J.    This litigation had its inception in a bill of complaint filed by William Matier, administrator both of the estate of Amos Wilt, deceased, and of his wife Emily Jane Wilt, deceased, the heirs of said parties being made defendants.    The purpose of the bill was to obtain instructions from the court on certain legal complications which had developed primarily in regard to 40 acres of land located in Isabella county described as the southwest quarter of the southeast quarter of section 20, town 16 north, of range 3 west.    This 40 acres was acquired by Amos and Emily J. Wilt in 1908 by a deed to them as husband and wife.    They also owned the southeast quarter of the southeast quarter of section 21 of the same township and range.    On March 28, 1912, they mortgaged the two 40-acre tracts of land to the Exchange Savings Bank of Mt. Pleasant for the sum of $2,500.    In 1913 Emily J. Wilt became insane, was duly so adjudged by the probate court of Isabella county and committed as a patient to the insane asylum at Traverse City.    Amos Wilt died April 8, 1920, and his wife, Emily J., died in the insane asylum on August 9, 1920.    Had the titles to the above described property remained undisturbed as they were at the time she became insane and was committed to the asylum, she would have unquestionably become the sole owner of the 40-acre tract of land in question on his death.    But the following manipulations raised complications with respect to this tract which led to the courts for adjustment between claimants.

On January 17, 1914, Amos Wilt petitioned the probate court of Isabella county for the appointment of his nephew Emery F. Wilt as guardian of his insane

wife, Emily J.    On February 4, 1914, an order of appointment was made by the court as petitioned.    On the same day Emery F. Wilt filed a formal inventory of his ward's estate, consisting of the contingent interests above noted, and a petition praying authority to sell her interest in the 40 acres of land first described, and on March 2, 1914, the probate court granted him a license to sell the same, he giving the required bond which was duly approved by the court. On April 6, 1914, Emery F. Wilt, as guardian, and Amos Wilt entered into a contract with John J. Wilt (son of Amos and Emily J.) and his wife, Emma Wilt, for sale to them of said 40 acres at a stated price of $2,200, the terms of payment being $275 down and $100 or more yearly with interest on unpaid balances until the full amount was paid.    On March 16, 1916, Amos Wilt and Emery F. Wilt, as guardian, gave a warranty deed of this 40 acres to John J. and Emma Wilt as husband and wife.    On March 21, 1916, John J. and Emma Wilt gave a mortgage on this 40 acres to the State Bank of Coleman for $1,200.    On April 7, 1916, Emery F. Wilt filed his report of sale with the probate court showing that he had sold at private sale the interest of his ward in said 40 acres of land on April 6, 1914, for the sum of $1,100, that being the highest price obtainable therefor and not less than the value determined by the court.    On April 17, 1916, the judge of probate filed an order confirming said sale.    John J. Wilt and his wife, Emma, went into possession of the property shortly after the contract was given and continued in possession until John J. died on October 16, 1916.    After his death she remained on the place with their children, claiming to own it, and subsequently married defendant Lewis Weadel.    They were in possession of the 40 acres when Amos and Emily J. Wilt died and have so continued.    When Amos Wilt died on April 8, 1920,

he left surviving as his heirs at law his widow, Emily J., two daughters named Zelda Acker and Minnie B. Wilson, seven children of his deceased son named Earl, Ray, Glenn, Hurley, Otto, Margaret, and Almeda Wilt, and also two children of his deceased daughter named Iva Marr and Myrlen Fairbanks. It is to be noted in passing that all his children and grandchildren above-named survived and were also the heirs of his wife, Emily J., who died a short time later.

Embarrassed by uncertainties as to his legal duty under conflicting claims which confronted him, William Matier, as administrator of the estates of both Amos and Emily J. Wilt, filed his bill against all the parties to this suit, as appealed, primarily to have determined the validity of the deed of the 40 acres by Amos Wilt and his wife's guardian to John J. Wilt and his wife, Emma, and the right to its possession, or, if the deed be held valid, for an accounting as to the purchase price, and for such further or other relief as the court deemed just and equitable. Subsequent proceedings were had and process served preparatory to a final hearing with all defendants before the court. Emma Weadel (formerly John J.'s wife) answered with cross-bill claiming their contract and deed were valid, that they had taken and held possession of the 40 acres under them in good faith and expended a large amount in improving the same. An order *pro confesso* was entered as to some of the defendants after due proof of service. Others appeared and pleaded asking dismissal of the bill, urging, amongst other grounds, that the administrator had fulfilled his legal duties as such and had no authority to institute litigation for the purposes expressed in his bill. An affidavit of regularity was finally filed and a hearing was first had on pleadings and proofs in open court followed by an opinion filed April 27, 1922, in which the court said in part:

"The proceedings of the probate court relative to the sale of the interest of Emily J. Wilt, an incompetent person, in the lands held by Amos Wilt and said Emily J. Wilt, his wife, by the entirety would be, and is null and void. * * *

"For as much as the matter is before the court and the pleadings as they now stand are not such that the court can finally dispose of the matter, the heirs at law may have 20 days from filing hereof to take such other legal proceedings herein as they may be advised, otherwise the bill of complaint will be dismissed."

On June 14, 1922, a decree was filed in the case, saying in part, that:

"Based upon the recitals and law as stated in the opinions filed herein, it is hereby ordered that this cause is dismissed as to the plaintiff (William Matier) herein.

"It is further ordered that any heir of Emily J. Wilt claiming interest in the subject-matter of this suit may intervene therein within 20 days from this date, and that such further proceedings may be had in relation to same as may be agreeable to equity and good conscience.

"Unless any heir of Emily J. Wilt shall interplead in said cause within 20 days from and after entry of this order this cause shall stand dismissed from and out of this court from and after that date."

Zelda Acker, Minnie B. Wilson, Myrlen Fairbanks, Irene Fairbanks, and Iva Marr, heirs of said Emily J. Wilt, interpleaded, with a cross-bill against their former co-defendants, alleging that said deed from Amos Wilt and Emily J. Wilt by her guardian to John J. Wilt and Emma Wilt was null and void, and asked the court to decree the absolute title and possession of the 40 acres to the heirs of said Emily J. Wilt, to compel said defendant Emma Weadel and Lewis Weadel to pay the heirs the value of the use and occupancy of said premises from April 8, 1920, the time of the death of said Amos Wilt. Said defendants answered the said cross-bill in denial and affirmatively

claim for improvements.     Upon the issue so framed
a subsequent hearing was had on October 26, 1923.
As to it the court filed an opinion, on August 16, 1924,
followed by a decree dated April 29, 1925, in which
the court dismissed the case against the Exchange Sav-
ings Bank of Mt. Pleasant, held that the mortgage
executed and delivered to the State Bank of Cole-
man upon the 40 acres was void, that the estate of
Emily J. Wilt, deceased, owned in fee the 40 acres in
controversy and awarded to Emma Weadel and the es-
tate of John J. Wilt, deceased, from the estate of Emily
J. Wilt the sum of $2,000 for improvements made
upon said 40 acres, decreeing it a lien upon the land,
requiring payment of the sum so awarded be made
to said Emma Weadel and the estate of John J. Wilt
within 60 days from the date of the decree, in de-
fault of which she and said estate could foreclose said
lien according to law and practice regulating fore-
closures of liens in chancery.     From which appeal
was taken as follows:

"And now come Zelda Acker, Minnie B. Wilson,
Myrlen Fairbanks, and Iva Marr, plaintiffs in the
cross-bill filed by them in the above cause, and hereby
claim the benefit of an appeal to the Supreme Court
of this State from the decree made and entered in this
cause by the above entitled court on the twenty-ninth
day of April, A. D. 1925."

While numerous interesting questions arising from
this entanglement of litigation are mooted and more
or less argued in the briefs of counsel, as we read
this record the only question actually here on appeal
for decision by this court is the award by the trial
court in its decree filed April 29, 1925, of $2,000 to
Emma Weadel and the estate of John J. Wilt, making
the same a lien upon the land.     As begun and brought
to issue, the case was first heard on pleadings and
proofs and submitted some time prior to April 27,
1922.     On that date the court filed an opinion holding

in concise language that the probate proceedings authorizing sale of Emily J. Wilt's contingent interest in the 40 acres held in the name of herself and husband by entireties was "null and void." This was followed by the decree filed June 14, 1922, dismissing the bill as to the then plaintiff (administrator of the two estates), apparently final as to all matters the parties then entitled to be heard presented, only retaining jurisdiction to consider the claims of any heirs of Emily J. Wilt in the subject-matter of the suit who interpleaded within 20 days. Within 20 days the five above-named cross-plaintiffs interpleaded, alleging as a material basis of their claim that the 40 acres belonged to the estate of said Emily J. Wilt, of whom they were heirs. To that claim Emma Weadel and her children by John J. Wilt pleaded issuably in denial, affirmatively alleging that she and her deceased husband, John J. Wilt, had in good faith purchased and taken possession of the 40 acres as purchasers and made valuable improvements on the same, amounting to upwards of $2,500, for which it was claimed, in substance, they were equitably entitled to be reimbursed if their title was not sustained.

The question of the validity of the probate proceedings and deed pursuant to them appear to have again been made an issue on this hearing and the court again held that "the estate of Emily J. Wilt, deceased, is the owner in fee simple" of the 40 acres, and awarded compensation for improvements made upon it by the mistaken purchasers. Counsel for cross-plaintiffs and appellants entertainingly discusses the subject of tenancy by entirety with citation of numerous authorities and urges that this court should find that on the "death of Amos Wilt the title of Emily J. Wilt become complete in the land as the land then stood." This may be meant as a far-reaching reference to the court's declaration of a lien for improvements made upon

the land, but as defendants have not appealed from the court's decree holding Emily J. Wilt's estate owner in fee simple of the land, and no claim is made in the brief of appellee's counsel to the contrary we find no occasion to discuss the subject of tenancy by entireties.

The power of a chancery court in an appropriate case to declare an equitable lien for the value of improvements made in good faith by an innocent party in possession under a mistaken claim of ownership has been recognized by this and other courts as within equity jurisdiction.

"Such an equitable lien has not always been confined to cases in which a contract to reimburse could be implied at law. The right to a contribution or reimbursement from the owner, and the equitable lien on the property benefited as a security therefor, have been extended to other cases where a party innocently and in good faith, though under a mistake as to the true condition of the title, makes improvements or repairs or other expenditures which permanently increase the value of the property so that the real owner, *when he seeks the aid of equity* to establish his right to the property itself, or to enforce some equitable claim upon it, having been substantially benefited, is required, upon principles of justice and equity, to repay the amount expended." 3 Pomeroy's Equity Jurisprudence (4th Ed.), § 1241.

*Vide,* also, *Kelly* v. *Kelly,* 54 Mich. 30; *Ernst* v. *Ernst,* 178 Mich. 100; *Rzeppa* v. *Seymour,* 230 Mich. 439; 37 C. J. p. 319.

The plaintiffs having invoked equity against those in possession of the land opened the way for the latter to have their rights determined upon equitable principles, under which compensation may be awarded for improvements mistakenly made upon the land in good faith enhancing its value to the owner's substantial benefit. That, however, is not to be measured by the cost of such claimed improvements but by the resulting increased value of the property. The claimed im-

provements in the instant case are clearing and putting under cultivation from 17 to 20 acres of cutover land, building a house upon the property variously claimed to have cost from $1,400 to $1,800, some fencing and other minor betterments.    The testimony appraising the cost of this, for a portion of which there is some evidence tending to show Amos Wilt paid, is inharmonious and however viewed not the equitable test. Measured by the extent it increased the value of the property and benefited the owner the most tangible test is the price ($2,200) for which Amos Wilt sold the place to his son, John J., and his wife, which may be assumed the then fair market value, and its market value after such improvements were made as shown by the testimony, which varied from $3,000 to $3,600. This would be at most $1,400, not taking into consideration a generally increased acre value of such land in that locality exclusive of improvements, of which there was some rather uncertain testimony, or the possession and use of said premises since August 6, 1914, by John J. Wilt and his family.

The numerous conflicting claims arising out of this controversy are narrowed down, as presented here for review, to the trial court's decree that:

"There is due to Emma Weadel and the estate of John Wilt, deceased, from the estate of Emily J. Wilt, deceased, the sum of two thousand dollars for improvements to the above described land,"

making the same a lien thereon.

We are of opinion that that award should be and the same hereby is reduced to $1,400.    So modified the decree will stand affirmed, without costs to any of the parties.

BIRD, C. J., and SHARPE, SNOW, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.