Motion to dismiss denied November 10, 1925, argued October 13, reversed October 25, 1927.

## JOHN SNEED v. SANTIAM RIVER TIMBER CO.

### ET AL.

(260 Pac. 237.)

Corporations—Corporation is Entity Independent of Stockholders.
    1. A corporation is an entity separate, independent and apart from associates who compose its stockholders.

Corporations—Incorporator or Stockholder Sued Individually, Claiming That Creditor must Look to Corporation for Payment, Does not Thereby Justify Court in Denying Him Benefit of Corporate Entity Shield.
    2. When incorporator or stockholder is sued individually, and claims that alleged creditor dealt with corporation and not with associates, and that creditor must look to corporation for payment, he does not thereby take position that will justify court in denying him benefit of corporate entity shield.

---

1.  See 7 R. C. L. 25.

Reformation of Instruments—Evidence of Mutual Mistake or Fraud in Signing Contract With Corporation Without Making Officers Individually Liable Held not Such as to Require Reformation.

3.   In suit to reform contract made with corporation so as to hold corporate officers signing contract individually liable, evidence of mutual mistake or fraud in signing contract without making officers individually liable *held* not so definite and certain as to require reformation.

Reformation of Instruments—Parol Evidence to Reform Written Instrument for Fraud or Mutual Mistake must Produce Conviction in Mind of Court.

4.   Where party seeks to reform written instrument, parol evidence of mutual mistake or fraud must produce conviction in mind of court.

---

Corporations, 14 C. J., p. 52, n. 23.
Reformation of Instruments, 34 Cyc., p. 984, n. 34, p. 988, n. 37.

From Marion: I. H. McMAHAN, Judge.

Department 1.

This is a suit to reform a contract, the present phraseology of which, omitting parts with which we are not concerned, is:

"This argument, made and entered into this September eleventh, 1923, by and between the Santiam River Timber Co., Inc., called the party of the first part, and John Sneed, hereinafter called the party of the second part, to wit: * * The party of the first part agrees to pay the party of the second part as soon as the road is completed, the sum of two hundred dollars ($200.00) * * In witness whereof the parties have set their hands and seals this day, September 11, 1923, at Lyons, Oregon.

"SANTIAM RIVER TIMBER CO., INC.
"P. P. KROEKER,
"RICH L. REIMANN, Sec.,
"JOHN SNEED."

The portions of the contract which we have omitted bind the plaintiff to construct a short stretch

---

4.   See 23 R. C. L. 367.

of roadway and have it completed before September 23, 1923. The defendants are the Santiam River Timber Company, a corporation, P. P. Kroeker and Rich L. Reimann; the former individual was the president and the latter the secretary of the corporation. The complaint alleges that the plaintiff was unwilling to accept the corporation as his obligor because he doubted its financial responsibility and that it was the understanding of all the parties that the instrument should be so drafted that the obligation to pay should rest upon all three defendants; it alleges that the plaintiff's eyesight was defective and that before he affixed his signature Reimann and Kroeker informed him that they had signed the instrument individually as well as in their representative capacities. The complaint sets forth that thereupon he signed, unaware, however, of the fact that their statement to him was false. He avers that their representation to the effect that they had signed individually was false and made with an intent to deceive him, and that he had no means of ascertaining the falsehood. The complaint also alleges that through mutual mistake the instrument was so drafted that liability did not attach to the individual defendants. The complaint, in addition to alleging the corporate existence of the Santiam River Timber Company, sets forth:

"That said P. P. Kroeker and Richard L. Reimann formed said corporation so as to not be liable in case said corporation should become insolvent for any of the acts of said corporation."

The prayer asks for a decree reforming the contract so that Reimann and Kroeker will appear as parties signatory and as parties of the first part.

The answer denies all charges of fraud and of mistake.

We understand from the record that the lower court did not pass upon the issues of fraud and of mutual mistake, but disregarded the corporate entity entirely and held the two individual defendants liable as though they were partners or joint adventurers.                                REVERSED.

For appellants there was a brief and oral argument by *Mr. C. M. Inman.*

For respondent there was a brief and oral argument by *Mr. Robin D. Day.*

ROSSMAN, J.—1. It is, of course, well established that a corporation is an entity separate, independent and apart from the associates who compose its stockholders. The exposition of the corporate entity theory given by Lord Reading in *Continental Tyre & Rubber Co., Ltd.,* v. *Daimler Co., Ltd.,* 1 K. B. 893, has found wide approval:

"The fallacy of the * * contention lies in the suggestion that the entity created by statute is or can be treated * * as a mere form or technicality by reason of the * * character or its shareholders and directors. A company formed and registered under the Companies Acts has a real existence with rights and liabilities as a separate legal entity. It is a different person altogether from the subscribers to the memorandum or the shareholders on the register * * Once it is validly constituted as a * * company it is an artificial creation of the legislature and it retains its existence for all intents and purposes. It is a living thing with a separate existence which cannot be swept aside as a technicality. It is not a mere name or mask or cloak or device to conceal the iden-

tity of persons. * * It is a legal body clothed with the form prescribed by the legislature.''

There are many instances in which the corporate entity theory is disregarded, or in which, as it is sometimes put, the corporate veil is lifted and the court deals directly with the associates whom it finds behind the veil. The number of these decisions is rapidly increasing and considerable effort is being made to classify the cases under some well-defined rules of corporation law. The subject is dealt with in Cook on Corporations (8 ed.), §§ 663 and 664; Fletcher Cyclopedia Corporations, §§ 42–49; 23 Harvard Law Review, 253; 72 Pa. Law Review, 158; 17 Columbia Law Review, 128.

2. We have found no case, nor any statement by any writer, which would warrant us to deny the two individual defendants the benefit of the corporate shield which the state gave them. We find nothing in the record that indicates that they had used the corporate entity for any improper purpose. When an incorporator or a stockholder is sued individually and insists that his alleged creditor dealt with the corporation and not with the associates, and that he must, therefore, look to the corporation for payment, he does not thereby take a position that will justify the court in denying him the benefit of the corporate entity shield.

3. Let us now examine the evidence and ascertain whether the parties made a mutual mistake when they transcribed upon paper their agreement, and whether the defendants committed the fraud alleged. There is but little in the record which gives us a picture of the plaintiff except his statement that he was a rancher and that he occasionally worked as a logger. He testified that on previous occasions he

had been employed by the defendant corporation.
The trial judge, in ruling upon some objections, re-
ferred to the plaintiff as "the old man"; at another
time, in referring to the plaintiff, he said: "This
man is an intelligent witness." When the contract
was drafted and signed, there was present besides
the plaintiff, his thirteen year old stepson and wife,
the two individual defendants, the wife of one and
the son of the other. The contract was written by
hand by one of the defendants when all were present
in plaintiff's home, and then a duplicate original
was prepared. Before it was signed, it was read
aloud. One duplicate original was kept by the plain-
tiff; the other became the property of the defendants.
The discussion which preceded the drafting of the
contract and its preparation and execution consumed
about an hour and a half.

The plaintiff testified that he did not want to ac-
cept the corporation as his sole obligor because he
was afraid of its checks and "I didn't consider the
Santiam River Timber Company worth anything."
Apparently, he had no other objection to it. Let us
now analyze this statement and compare it with
circumstances that should be borne in mind in deter-
mining its weight. As we have seen before, the
plaintiff had on some prior occasion, been in the
employ of the corporation; the testimony discloses
that a few days prior to the time when he entered
into this contract he had paid the corporation $10
for which he secured from it a ten-dollar check which
he sent to his wife. Some days prior to the time that
he entered into the foregoing contract, he sold his
interest in a logging venture to the corporation for
$300. As part payment, he received the corporation's
check for $50, dated August 15th, which he cashed

August 18th, and its check, dated September 15th, for $250, which he testified he was to hold in escrow for some days due to the fact that the transaction had not been entirely consummated. This check was, however, cashed September 18th. On September 6th, he received a corporation check for $6, which was cashed September 25th. On September 10th, he received a corporation check for $62.86, which was cashed on September 14th. Thus, we see that about the date of the forementioned $200 contract he was accepting the checks of the corporation to a rather considerable extent and had agreed to hold in escrow as payment of his interest in a logging venture a $250 check.

His stepson was asked:

"Q. You go ahead and tell the court just exactly what you heard there that day. A. They said they would sign the contract, but I don't remember whether they said as a corporation or individually."

The plaintiff was asked:

"Q. Then as a matter of fact you are not claiming it was signed by the company and not by Reimann and Kroeker through a mistake on their part? A. I don't know whether a man could make a mistake signing his own name or not, they seemed both to have a very good idea—I don't think they made a mistake.

"Q. You don't claim it was not signed by them individually under a mistake on their part, do you? A. I claim it was signed through a bad mistake in my taking it, they agreed to sign it individually because they said either party was responsible for it, but when it comes to being looked into, they didn't do it."

Then, in response to a statement made by the court, the witness added:

"A. I don't think it could hardly be signed under a mistake on their part. * *

"Q. What do you mean by that?    A. Well, I think they just wilfully signed it that way in order to gyp me out of my money."

It developed in the testimony that after the contract had been written, the plaintiff discovered an error which might easily have escaped the attention of the ordinary reader, but which was corrected by interlineation; this has a tendency to show that before signing, he became familiar with the terms of the document.    The checks which we have mentioned bore the signatures of these individual defendants as officers of the corporation and thus informed the plaintiff of the existence of the corporation and of the defendants' representative capacities.    Kroeker and Reimann explained the absence of the word "president" after Kroeker's name on the contract by saying that generally a rubber stamp was used which impressed upon the paper the name of the corporation and the words "president" and "secretary" in appropriate places, and that, since the stamp was not used upon this occasion, the word "president" was accidentally omitted after Kroeker's name.    Both of these men testified positively that there was no understanding that personal liability was to attach to them; in fact, they say that subject was not discussed for the negotiations assumed without discussion that the corporation was the contracting party.    It will be noticed that this is in harmony with the testimony of the plaintiff's stepson, which we have previously quoted.    The testimony of these two men was not discredited, while the plaintiff was shown in error in regard to two statements made by him as a witness.

The plaintiff and his stepson were the only witnesses that supported the allegations of the complaint.

4. In cases of this character, where a party seeks to reform a written instrument, the testimony must produce conviction in the mind of the court. Pomeroy thus states the rule:

" * * The authorities all require that the parol evidence of the mistake and of the alleged modification must be most clear and convincing,—in the language of some judges, 'the strongest possible'—or else the mistake must be admitted by the opposite party; the resulting proof must be established beyond a reasonable doubt. Courts of equity do not grant the high remedy of reformation upon a probability, nor even upon a mere preponderance of evidence, but only upon a certainty of the error." Pomeroy on Equity Jurisprudence (4 ed.), § 589.

Wigmore, after analyzing numerous authorities, thus states the rule:

"But a stricter standard, in some such phrase as 'clear and convincing proof' is commonly applied to measure the necessity persuasion for a charge of fraud, * * for mutual mistake sufficient to justify reformation of an instrument * * . " Wigmore on Evidence (2 ed.), § 2498.

The same rule was announced by this court in the early case of *Shively* v. *Welsh,* 2 Or. 288; without deviation we have adhered to the same rule ever since. A collection of our cases may be found in *Menefee* v. *Gamble,* 119 Or. 224 (242 Pac. 628).

Based upon our analysis of the testimony, we do not find that the proof of mutual mistake or of fraud has the cogency required by the foregoing rules. The decree will, therefore, be in favor of the appellants. Costs will be allowed to neither party.    REVERSED.

RAND, C. J., and McBRIDE and COSHOW, JJ., concur.