Argued December 10, 1936; affirmed January 12, 1937

# EAST SIDE MILL & LUMBER CO. ET AL. *v.*
# DWYER LOGGING CO. ET AL.
### (64 P. (2d) 89)

Department 2.

*Leo J. Hanley,* of Portland (Cookingham & Hanley, Glen McCarty, and Ridgway, Johnson & Kendall, all of Portland, on the brief), for appellant.

*L. J. Balbach* and *Wendell K. Phillips,* both of Portland (Sheppard & Phillips and L. J. Balbach, all of Portland, on the brief), for respondents.

BAILEY, J. This suit was instituted by the plaintiffs East Side Mill and Lumber Company, Willamette Rafting Company, both corporations, and J. P. Miller, against the defendants Dwyer Logging Company, a corporation, and A. J. Dwyer, for an accounting. From a decree in favor of the plaintiff East Side Mill and Lumber Company against the defendant A. J. Dwyer for the sum of $577.77 with interest thereon at the rate of 6 per cent per annum from October 19, 1931, the date of the institution of this suit, and for costs, the defendant Dwyer prosecutes this appeal.

The facts out of which the controversy arises are, briefly, the following: In November, 1923, the defendant Dwyer Logging Company entered into a contract with Bear Creek Logging Company to sell to the latter corporation certain timber land and logging equipment at a price of $525,000. Some of the property agreed to be sold belonged to East Side Mill and Lumber Company, some to Willamette Rafting Company, some to Dwyer Logging Company, and a part of it to J. P. Miller and A. J. Dwyer jointly. All those owners with the exception of Dwyer Logging Company had conveyed their respective properties to that corporation as trustee for the purpose of fulfilling the contract between it and Bear Creek Logging Company and accounting to the *cestuis qui trustent* for the proceeds, less expenses connected with the sale.

Incidental to the sale of the property there was incurred a brokers' commission of 5 per cent of the purchase price, to be paid as and when that price was paid. Thereafter the purchase price was reduced from $525,000 to $500,000 and as a part of the agreement the brokers reduced their charge proportionately, leaving due them a total of $25,000 commission upon payment of the entire purchase price. The controversy before us has to do with $1,760 of the brokers' commission, turned over to Dwyer.

The contract for a commission was made by Dwyer Logging Company with C. W. Embody, who also had an agreement to divide the commission equally among himself and four associates, and the distribution of the commission as the same matured was committed to the Bank of California. On October 21, 1925, the entire $25,000 commission had accrued and the Bank of California had distributed $7,675.33, leaving on hand $17,324.67. After deducting $25 for its escrow charge the bank distributed to those remaining entitled to share in the commission all but $1,760 of the amount so held by it. The $1,760 was then paid direct by the bank to the defendant A. J. Dwyer on the date last above mentioned.

It is the theory of plaintiff East Side Mill and Lumber Company that this $1,760 was received by Dwyer Logging Company or by Dwyer individually as payment under a secret agreement between Dwyer Logging Company, acting through Dwyer, and the brokers, whereby the latter were to reduce their commission $1,760, which sum was to be paid to Dwyer either for his own benefit or that of Dwyer Logging Company. This $1,760 was approximately ten per cent of the amount remaining with the Bank of California at the time the final distribution of commission was made by the bank.

Before the institution of this suit the plaintiff J. P. Miller assigned his right and claim to share in any part of the $1,760 to East Side Mill and Lumber Company, and an attempt was made to effect on behalf of Willamette Rafting Company an assignment of its interest in the fund to that plaintiff. The trial court, however, found that at the time of the attempted assignment on behalf of Willamette Rafting Company that corporation had been dissolved for more than five years, hence was non-existent, and therefore the assignment was ineffective.

The check from the Bank of California to Dwyer for $1,760 was made on October 21, 1925, and on March 19, 1926, a certificate of dissolution of Dwyer Logging Company was filed with the corporation commissioner of the state of Oregon, and the said corporation was dissolved. That was more than five years prior to the institution of this suit. A. J. Dwyer was at all times owner of all the shares of stock of Dwyer Logging Company except two qualifying shares of directors and at the time of its dissolution all the assets of that corporation were received by him.

■ The trial court found that the $1,760 paid by the Bank of California to Dwyer was received by him in fulfillment of a secret agreement with the brokers who effected the sale of the property and equipment above mentioned; that this money in equity and good conscience belonged to the plaintiffs and the defendants in proportion to the respective valuation of the property of each sold and conveyed by Dwyer Logging Company to Bear Creek Logging Company; and that the plaintiff East Side Mill and Lumber Company was entitled to recover from A. J. Dwyer its share and that of J. P. Miller in and to the fund. This conclusion of the circuit court is amply supported by the record in

the case and we shall not review the facts in further detail.

■ It is, however, claimed by Dwyer that the check for $1,760 so received by him from the Bank of California was by him transferred to Dwyer Logging Company as trustee or otherwise, and that therefore no liability attached to him. It has already been pointed out that Dwyer owned all the stock of Dwyer Logging Company, and the record discloses that to all intents and purposes he was the corporation, and that all negotiations had in the name of the corporation were conducted by him. There is to be taken into consideration the further fact that upon the dissolution of the corporation Dwyer received all its assets. Regardless of whether he acted individually or as an officer of the corporation in making the secret profit, he had full knowledge of the facts, benefited by receiving the money and must be held accountable for the proportion of the $1,760 due the parties thereto entitled. Dwyer may not in equity avail himself of the legal fiction of corporation entity to sanction his retention of this secret profit: *Linn & Lane Timber Co. v. United States,* 196 Fed. 593; *Bennett v. Minot,* 28 Or. 339 (39 P. 997, 44 P. 288).

By way of further defense and in the nature of a plea in abatement the defendants aver that on or about January 31, 1931, the plaintiff East Side Mill and Lumber Company had on its books an account owing by Southeast Portland Lumber Company in excess of $10,000 and that during the month of February of that year the said plantiff "by a bookkeeping entry balanced the account, and pretended to transfer and assign the account to the Shaver Transportation Company", but that said account was never so assigned or transferred; that such bookkeeping entry was fraudulently made by that plaintiff for the purpose of avoiding the payment

of taxes on said account receivable; that said account was not listed as a taxable item by East Side Mill and Lumber Company and no taxes upon the same were paid for the years 1931 and 1932; and that subsequent to March, 1931, the East Side Mill and Lumber Company by a bookkeeping entry "reversed the said entry showing assignment to Shaver Transportation Company and has since paid no taxes" on that book account. It is further alleged that said plaintiff "is delinquent in real property taxes and by virtue of § 25-239, Oregon Laws [Oregon Code 1930], the said plaintiff should not be permitted to maintain any suit" while such delinquency continues. A demurrer to this answer was sustained, and error is predicated on such ruling of the trial court.

■ Section 25-239, *supra,* provides that no corporation "which shall have failed to pay the last annual license fee, or any other tax or fee which shall have become due and payable against it, as provided in this act or any law of this state", shall be permitted to maintain any action, suit or proceeding within the state while such delinquency shall continue, and that "it shall be the duty of the corporation commissioner to prepare a list of such delinquency, at the time that any such license fee or other tax of a corporation . . . shall become delinquent", which list shall contain the amount of the tax or license fee delinquent and shall be filed in the office of the corporation commissioner as a public record. Section 25-240, Oregon Code 1930, provides that a plea that a corporation has not paid any tax or fee required by any law of this state, which is due and payable, may be interposed at any time before trial upon the merits of any action, suit or proceeding. Without discussing the question of the sufficiency of this affirmative answer, we take occasion to state that it

is apparent from the two sections last above referred to that the legislature did not intend to prohibit the maintenance of any action, suit or proceeding by a corporation while delinquent in payment of personal or real property taxes. Those sections pertain only to taxes and fees imposed as incidental to the conduct of corporation business and the exercise of corporate franchises, and not to general property taxes. The corporation commissioner has no control over the collection of general property taxes. Were those sections of the code to be construed as contended for by appellant, serious constitutional questions, not here necessary to enumerate, would be involved. The circuit court did not err in sustaining the demurrer to that affirmative answer.

The decree appealed from is affirmed.

BEAN, C. J., and RAND and ROSSMAN, JJ., concur.