Argued September 10, affirmed December 30, 1971

McKAY ET UX, *Appellants, v.* HORSESHOE
LAKE HOP HARVESTERS, INC., *Respondent.*

491 P2d 1180

*J. Ray Rhoten*, Salem, argued the cause for appellants. On the briefs were Rhoten, Rhoten & Speerstra, Salem.

*Otto R. Skopil*, Salem, argued the cause for respondent. With him on the brief were Williams, Skopil, Miller, Beck & Wyllie, Salem.

Before O'CONNELL, Chief Justice, and DENECKE, HOLMAN, TONGUE and BRYSON, Justices.

DENECKE, J.

Plaintiffs brought an action to recover possession of their land. The defendant answered seeking equitable relief upon the ground that the defendant made improvements on the land under the mistaken belief, shared by the plaintiffs, that defendant was occupying the land under a 99-year lease; and that the

plaintiffs would be unjustly enriched if they were permitted to resume occupancy without compensating defendant for its expenditures made under the mutual mistake.

The trial court found for defendant and decreed that the plaintiffs had the option of either paying the defendant for the improvements or conveying the property to the defendant in consideration for the payment of the value of the land. Plaintiffs appeal.

■ We have previously held that a landowner upon whose property improvements have been made under the mistaken belief that they belonged to the improver must either pay for the improvements or sell the land upon which the improvements were made to the improver. *Jensen v. Probert,* 174 Or 143, 148 P2d 248 (1944), and *Comer v. Roberts,* 252 Or 189, 448 P2d 543 (1968).

Plaintiffs contend that this rule is limited to instances in which the mistake is brought about by the landowner and that this is not the fact here. The rule has no such limitation. In *Jensen v. Probert,* supra (174 Or 143), the landowner did nothing to cause the defendant to mistakenly believe he owned the land; nevertheless, the mistaken improver was given relief.

Plaintiffs also contend the defendant did not act in good faith because it had notice that possibly it did not have a 99-year lease. This is in equity and we try the appeal de novo. The inferences to be drawn from the evidence are conflicting; however, we find, as did the trial court, that the defendant did act in good faith.

■ Plaintiffs contend the defendant corporation is not entitled to recover the value of the principal building because it did not build it and does not own it.

The defendant corporation is owned by members of the Smith family. There was testimony that the stock is "based on an acreage situation." H & L Farms, a partnership, consisting of four Smith brothers, owned 60 per cent at the time of trial; a cousin, Carl, owned 40 per cent; another Smith, Maurice, is the registered owner of some corporate stock. The testimony was that he is "technically" still a shareholder; however, he had no hop acreage at the time and, therefore, was not considered an owner.

The testimony was that Carl Smith and H & L Farms, who, according to the testimony, now have 100 per cent of the ownership of the defendant, advanced the money for the improvements. The same witness who so testified, however, testified that the corporation paid for the improvements. This witness said Carl Smith and H & L Farms were the corporation. Carl Smith and the partnership, H & L Farms, have taken the depreciation allowance for the improvement as a deduction on their personal income tax returns. The defendant corporation has taken no depreciation for the improvement.

This case does not involve an attempt "to pierce the corporate veil." In such cases the plaintiff is attempting to secure a judgment against an individual for acts ostensibly done by a corporation; for example, *Wakeman v. Paulson,* 257 Or 542, 480 P2d 434 (1971). In such cases the corporate entity is disregarded when it has been used in some form as an instrument of fraud. Fraud is not involved in the instant case.

The question is, can the plaintiffs successfully contend that the distinction between the corporate entity and the individuals is so vital that it must be observed even though by so doing a windfall would

result to plaintiffs and the individual owners of the corporation would be deprived of what in substance is rightfully theirs. We conclude it is not so vital under these circumstances that the distinction should be observed.

It is of no concern to plaintiffs whether the improvements were built and owned in the name of the corporation or by the individual stockholders of the corporation. The law is that the plaintiffs have to pay for the improvements if they desire to keep the land. As far as the plaintiffs are concerned, it is immaterial to whom they make payment as long as they acquire ownership of the improvements and are not subject to liability to anyone else. In this case payment to the corporation will effectively give the plaintiffs ownership and foreclose plaintiffs from liability to anyone else for payment for the improvements.

No decisions have been found comparable to the present facts. A decision, however, permitting an individual to secure a benefit nominally belonging to a corporation is *Crossman v. Fontainebleau Hotel Corp.,* 273 F2d 720 (5th Cir 1959). A lease contained the usual provision prohibiting subleasing without the consent of the lessor. The lessee was a corporation. An attempt was made to exercise an option in the lease and renew the lease. In the renewal an individual was named as lessee and the lessor claimed this was an assignment in violation of the lease. The issue was decided upon the pleadings. The court held that upon the face of the pleadings, the individual and the corporation were inseparable and the question of whether they were to be treated as one would be for a trial on the merits.

In the instant case we conclude, as did the

trial court, that "the two stockholders are, for practical purposes, the corporation."

■ The trial court decreed that if the plaintiffs elected to purchase the improvements defendant erected upon the property they would be required to pay $49,600 to the defendant. The appraiser called by defendant testified that the highest and best possible use of the property was the present use, hop processing. The appraiser called by plaintiffs agreed. The latter was then asked to give an opinion on the "residual value" of the improvements. This same witness testified that this had "nothing to do with market value." He stated residual value is "[t]he value of the Hop drier and picker buildings to the 5 acres of land only." Defendant's objection to his testimony was sustained and the appraiser then testified "under the rule." He stated that the only "alternate use" was hay storage.

The trial court was correct in excluding the testimony. The value to be paid by the owners if they choose to retain the premises is the market value of the improvements used for their highest and best possible use. One of the cases cited by plaintiffs holds that the improver cannot obtain reimbursement for his costs, only for the enhancement of market value, *Acker v. Weadel,* 236 Mich 374, 210 NW 212, 215 (1926). We agree with this.

Affirmed.