Argued July 10, affirmed August 8, 1974

ELVALSONS, *Respondent, v.* INDUSTRIAL
COVERS, INC., *Defendant,* AND SARGENT
INDUSTRIES, INC., *Appellant.*

525 P2d 105

*Ferris F. Boothe,* Portland, argued the cause for appellant. With him on the briefs were Black, Kendall, Tremaine, Boothe & Higgins, Portland.

*Daniel H. Skerritt,* Portland, argued the cause for respondent. On the brief with him were Lindsay, Nahstoll, Hart, Duncan, Dafoe & Krause and Robert E. Babcock, Portland.

TONGUE, J.

This is an action for damages for breach of warranties following the failure of an "air-supported" warehouse. The complaint named as defendants both Sargent Industries, Inc., a California corpration engaged in the manufacture and sale of air-supported structures, and its wholly owned subsidiary, Industrial Covers, Inc., another California corporation. The case was tried before a jury, which returned a verdict of $46,240 against both defendants. Defendant Sargent appeals from the resulting judgment. Defendant Industrial Covers did not appeal.

■ Defendant Sargent has attempted to assign five errors by the trial court, including errors relating to the admission of evidence, the denial of motions for involuntary nonsuit and directed verdict, and an instruction to the jury.[1] None of the five attempted assignments of error comply with the Rules of Procedure of this court, and, in particular, the clear and specific requirement of Rule 6.18 that assignments of error "must set out verbatim the pertinent portions of the record."[2]

[1] The assignments of error are as follows:

"1. The trial court erred in admitting Exs. 4 through 10 over the objections of appellant in that plaintiff's complaint alleged that 'Plaintiff and Defendants' entered into a written contract (which is a pleading solely of a joint contractual obligation); Exs. 19 and 20 are the contractual documents and are conclusive to the contrary since they show the contract was solely between Elvalsons and Industrial Covers, and there is no pleading of an 'alter-ego' relationship between Industrial Covers and Sargent.

"2. The trial court erred in admitting testimony of Erik G. Erikson over the objections of appellant on the same grounds as in 1. above.

"3. The trial court erred in denying appellant's motion for involuntary nonsuit at the conclusion of plaintiff's case on the grounds that there was a failure of proof as to Sargent as more fully set forth therein (Tr. 45-54) and in 1. above.

"4. The trial court erred in denying appellant's motion for directed verdict at the conclusion of the presentation of evidence upon the grounds that there was a failure of proof as to Sargent as more fully set forth in appellant's motion (Tr 55-58) and in 1. above.

"5. The trial court erred in instructing the jury that the jury was to consider as a matter of law that the liability of defendants Industrial and Sargent were identical and one and the same. To its instruction exception was duly taken (Tr 59-60). Sargent was not a party to the contract between Elvalsons and Industrial Covers. * * *"

[2] Rule 6.18 provides as follows:

"In appeals in actions at law, no alleged error of the trial court will be considered on appeal unless regularly assigned as error in the appellant's (or cross-appellant's) opening

In addition, the three-page "Statement of the Facts" in appellant's brief is completely devoid of any references to transcript pages, contrary to that specific requirement of Rules 6.17 and 6.22. It also refers to only two exhibits and omits reference to much of the evidence favorable to the plaintiff, including several written documents, contrary to the requirement of Rule 6.17 that an appellant's brief must include "a concise but complete statement of all the facts of the case material to the determination of the question or questions presented for appellate decision; * * *."

Under these circumstances, we decline to con-

brief, except that the appellate court may take notice of *errors of law apparent on the face of the record.*

"Each assignment of error shall be clearly and succinctly stated under a separate and appropriate heading. *The assignment of error must* be specific and must *set out verbatim the pertinent portions of the record. Assignments of error which the court can consider only by searching the record for the proceedings complained of will not be considered.*

"*The arrangement and wording of assignments of error so* far as applicable, together with reference to page of the transcript or narrative statement, *shall conform to illustrations in Appendix D.*" (Emphasis added)

Appendix D includes the following:

"*Illustration 1*

"The court on examination of witness _____ erred in sustaining (or failing to sustain) objection to the following question:

(Set forth the question, the objection made, the answer given, if any, and offer of proof, if any, all verbatim.)

"*Illustration 2*

"The court erred in denying (sustaining) the motion for nonsuit or directed verdict:

(Set out motion verbatim.)

"* * * * *

"*Illustration 5*

"The court erred in giving the following instruction:
(Set out verbatim instruction and exception made thereto.)"

sider appellant's assignments of error.[9] Out of deference to interests of appellant as a client, however, and to prevent any miscarriage of justice, we have examined the record to determine (1) whether the complaint alleges facts sufficient to constitute a cause of action; (2) whether there was substantial evidence to support the judgment; and (3) whether there were any "errors of law apparent on the face of the record." With these considerations in mind, we shall summarize the evidence.

On January 1, 1970, Industrial Covers, a California corporation authorized to do business in Oregon, was acquired by Sargent, another California corporation, as a wholly owned subsidiary. There was no evidence that Sargent was authorized to do business in Oregon. At the time of its acquisition by Sargent, Industrial Covers also had a "division," called PICO (Pacific Inflation Company).

As of that date all of the 150 or more employees of Industrial Covers and its PICO Division, including 15 employees on its "design staff," became employees of Sargent and were paid by it. This presumably included Erik Erikson, its former manager. During the period beginning January 1, 1970, Erikson "reported" to H. C. Bream, whose position was described as general manager, PICO Division, Sargent Industries.

---

[9] For previous cases in which this court has refused to consider assignments of error which have not complied with the rules of the court, see Leite v. Sambo's Restaurants, Inc., 264 Or 498, 502, 506 P2d 176 (1973); Bowlds v. Taggesell Pontiac, 245 Or 86, 93-94, 419 P2d 414 (1966); Jaeger v. Estep, 235 Or 212, 232, 384 P2d 175 (1963); Baker v. McKinney, 233 Or 383, 384, 378 P2d 711 (1963); State v. Lamphere, 233 Or 330, 333, 378 P2d 706 (1963); Barbour v. Suchy, 217 Or 34, 35, 340 P2d 951 (1959); Melgreen et ux v. McGuire, Inc. et al, 214 Or 128, 140, 327 P2d 1114 (1958), among other cases.

During the same period, Gordon Holcombe, former president of Industrial Covers, was a "consultant" to Bream.

Although it then had no employees paid by it, Industrial Covers had the same mailing address and telephone number in San Francisco as Sargent.

Early in 1970 Elmo Ferrari, plaintiff's president, needed storage facilities in Portland. He heard about "air structures" and about Sargent Industries and was told to contact Mr. Bream. After discussions with Bream "and his people," including Erikson and Holcombe, plaintiff "ended up" with a contract for construction of the air-supported warehouse.

That contract was the result of a three-page letter "proposal," dated February 2, 1970, on the stationery of Industrial Covers, Inc., signed by Erik G. Erikson, Jr., as manager. The proposal provided, among other things, that "Industrial Covers, Inc., shall warranty the inflatable warehouse * * * against material and workmanship defects for a period of three (3) years." That proposal was accepted by Mr. Ferrari by letter bearing the same date addressed to Industrial Covers, Inc., attention of E. G. Erikson, Jr., Manager.

It does not appear whether Sargent or its employees built or paid for the construction of the warehouse. However, on April 1, 1970, plaintiff was notified by telegram signed "G B Holcombe Sargent Industries PICO Division Industrial Covers," stating that the structure was completed and "transferred from Industrial Covers to Elvalsons as of noon today," but that "we will, of course, assist and instruct as reasonably requested and all warranty provisions remain in force."

In June 1970 plaintiff's president, Mr. Ferrari, had a further conversation with Mr. Bream about the warehouse, following which a letter dated June 26, 1970, was mailed to him on the letterhead of "Sargent Industries, PICO Division, Industrial Covers" relating to "emergency aids and procedures," among other things. That letter was signed by G. B. Holcombe under the words "Sargent Industries - Industrial Covers."

Some difficulties were then apparently encountered, following which a further letter on almost identical letterhead of Sargent Industries was sent to plaintiff, dated July 6, 1970, signed by Hugh Bream "General Manager" and stating that:

> "To the best of our ability, we will see to it that the repair is properly done this time so that no repetition can occur. We will carefully check it out and report back to you as to cause and preventative measures to preclude future problems. This as you would expect is at our cost. * * *
> "* * * [W]e still feel that we can restore your confidence in inflatable buildings and their reliability."

The next day a telegram signed by "G B Holcombe Sargent Industries" was sent to plaintiff stating that "we have contracted * * * to effect repairs * * * and our Mr. Erikson will arrive site this afternoon. * * *"[4]

Further and more serious difficulties were encountered in December, following which four pages of drawings for "proposed renovations" were prepared by Sargent on the same Sargent Industries letter-

---

[4] Defendant Sargent says in its reply brief that repair work done in June was not "warranty work," but to repair damage caused by plaintiff's carelessness, and was done by Sargent under a separate contract with plaintiff. However, defendant gives no reference to any testimony or exhibits to establish that fact.

head, estimating the price of such work to be $23,800, and signed by Erik G. Erikson under the words "Sargent Industries - PICO Division."

Again, in March 1971 further difficulties were encountered following which Sargent paid $7,270.53 on March 21, 1971,. to a contractor for further repair work. During this entire period, from January 1, 1970, to March 21, 1971, the "relationship" between Sargent and Industrial Covers remained the "same."

It does not appear from that portion of the record designated for the purposes of this appeal whether the work done in December or March was "warranty work" — that apparently being one of the disputed issues on the merits of plaintiff's claim for damages for breach of warranties, for which the jury awarded a. part, but not all, of the damages claimed.

Most of the foregoing evidence was received over objection by Sargent that it was "irrelevant and immaterial for the reason that it tends to prove something which has not been pleaded." The evidence was offered and received 'for the "limited purpose" of showing the "relationship to the corporation" or the "interrelationship of the companies."

Both the original first and second amended complaints alleged that Industrial Covers was a wholly owned subsidiary of Sargent. A single answer was filed on behalf of both defendants. That answer, as well as the amended answer, as also filed on behalf of both defendants, admitted that allegation of the complaint and also admitted "that *they* sold to Plaintiff an air supported structure" (emphasis added). Some 10 days before trial, however, defendants filed another amended answer in which that admission was deleted.

At the time of trial plaintiff asked for leave to file an amended complaint alleging the relationship between defendants in more detail. That request was denied. However, defendants' original answer was offered in evidence as an admission and was received without objection. Sargent says in its brief that it was an "inadvertent admission," but no showing of mistake, inadvertence or other explanation was offered at the time of trial.

At the conclusion of the plaintiff's evidence the trial judge denied a motion for involuntary nonsuit, stating that:

> "It may be that the evidence of relationship between Industrial Covers and Sargent could have been developed a little more helpfully, but it is my opinion from the evidence that I have heard that the plaintiffs were dealing with Sargent Industries and Industrial Covers.

> "While it may have been technically a viable corporation, I don't think it was actively in business and I think Sargent was in business and were doing business under PICO Division of Industrial Covers Division.

> "All correspondence before and after the contract would suggest the fact the party was Sargent, and I think it would in effect effect a fraud on the plaintiffs if I were to go along with your motion. And so I am going to deny it.

> "I don't mean to suggest this was a calculated attempt to defraud anybody, but I think the manner in which Sargent Industries presented itself would mislead the plaintiffs, and it would result in a fraud or in a fraudulent result to the plaintiffs if I were to go along with your motion.

> "I think these people are entitled to the protection afforded by the substance of the communications and that they were dealing with Sargent Industries."

The trial judge also denied a motion for directed verdict, saying:

> "I want to state on the record in the state of the evidence I am of the opinion that Industrial Covers, Inc. and Sargent Industries, Inc. are for the purpose of this lawsuit one and the same, and I am going to instruct the jury on that basis."

The jury was then instructed that:

> "I have determined as a matter of law that for the purposes of this case that there is only in fact one defendant. And if your verdict is in favor of the plaintiff, it would be against both defendants.
>
> "If, on the other hand, your verdict were in favor of the defendant, it would be in favor of both defendants."

Defendant Sargent excepted to that instruction.

1. *The complaint alleged sufficient facts to constitute a cause of action against both Industrial Covers and Sargent.*

■ As previously stated, the complaint alleged that this contract was entered into by plaintiff and *defendants* and that *defendants* not only agreed to design and build the structure, but made the warranties relied upon as the basis for this action.

Regardless of whether such allegations may be sufficient to support recovery against Sargent on an "alter ego" theory, they were clearly sufficient (at least in the absence of motion or demurrer) to support recovery against Sargent on the theory that the contract was made by Industrial Covers as its agent and that Sargent, as the principal, was responsible for its performance.[6]

---

[6] Andersen v. Turpin, 172 Or 420, 427-28, 142 P2d 999 (1943); and Downs v. Nat. Share Corp., 152 Or 546, 552, 55 P2d 27 (1936).

2. *There was sufficient evidence to support a judgment against Sargent.*

In *Epton v. Moskee Investment Co. et al,* 180 Or 86, 93, 174 P2d 418 (1946), we said that:

> "It is well settled that, when corporate entity is used to accomplish fraud or injustice, the courts will disregard it, and will look through the corporate form to the real actor or actors in the transaction. 18 C.J.S., Corporations, section 7b; Anderson, Limitations of Corporate Entity, sections 21, 23, 48; *Security Sav. & Trust Co. v. Portland Flouring Mills Co.,* 124 Or 276, 288, 261 P. 432; *Murray v. Wiley,* 169 Or 381, 399, 127 P. (2d) 112, 129 P. (2d) 66; Anno., 1 A.L.R. 610, 613; 34 A.L.R. 597, 600. This rule is applicable whether the stock is owned by one person or by many, or by another corporation. * * *"

In a number of cases this court has applied this principle by disregarding or "looking through" the "corporate form" to the "real actors" as the "alter ego" of the corporation when the "corporate entity" would otherwise be used to accomplish fraud or injustice.[9]

---

[9] Creditors Protective Ass'n v. Balcom, 248 Or 38, 46, 432 P2d 319 (1967); McIver v. Norman, 187 Or 516, 537-38, 205 P2d 137, 213 P2d 144, 13 ALR2d 749 (1949); East Side Lbr. Co. v. Dwyer Co., 155 Or 339, 343, 64 P2d 89 (1937); and Bennett v. Minott, 28 Or 339, 347-48, 39 P 997, 44 P 283 (1896).

See also: Abbott v. Bob's U-Drive et al, 222 Or 147, 161-62, 352 P2d 598 (1960); Welch Holding Co. v. Galloway, 161 Or 515, 536, 89 P2d 559 (1939); Murray v. Wiley, 169 Or 381, 400, 127 P2d 112, 129 P2d 66 (1942); Portland T. & S. Bank v. Lincoln Realty Co., 180 Or 96, 116, 170 P2d 568 (1946); Emrich v. Emery et al, 216 Or 88, 332 P2d 1045, 335 P2d 604, 337 P2d 972 (1959); Ebco, Inc. v. Bechtold, 251 Or 543, 546, 446 P2d 120 (1968); and McKay v. Horseshoe Lake Hop Harv., 260 Or 612, 615, 491 P2d 1180 (1971).

Cf. Sneed v. Santiam River Timber Co. et al, 122 Or 652, 656, 260 P 237 (1927); Security S. & T. Co. v. Portland F.M. Co.,

The "alter ego" theory of "piercing the corporate veil" as a means of preventing fraud or injustice has been criticized for its indefiniteness and because of the absence of objective standards by which the application of that theory can be determined.[②]

■ In this case we need not decide whether or not the verdict and judgment may be affirmed on the ground that Industrial Covers was the "alter ego" of Sargent because there was ample evidence to support a judgment against Sargent on the theory that it was the principle, if not the "real party in interest"; that Industrial Covers was its agent, if not its "instrumentality," and that Sargent also promised and undertook to perform warranty obligations under this contract.

Although involving different facts, our decision in *Portland T. & S. Bank v. Lincoln Realty Co.*, 180 Or 96, 170 P2d 568 (1946), is nevertheless of interest in considering the facts of this case. In that case we said (at 116), as may also be said in this case, that:

"This appears to be an instance in which a sub-

---

124 Or 276, 287-88, 261 P 432 (1928); Mitchell v. Ausplund, 150 Or 572, 581, 47 P2d 256 (1935); Miller Lumber Corp. v. Miller, 225 Or 427, 436, 357 P2d 503 (1961); State Highway Com. v. Brassfield et al, 228 Or 145, 151, 363 P2d 1075 (1961); Peet v. Rose City Dodge, 251 Or 68, 69, 444 P2d 478 (1968); Wakeman v. Paulson, 257 Or 542, 480 P2d 434 (1971).

[②] See Weisser v. Mursam Shoe Corp., 127 F2d 344, 348 (2d Cir 1942); Gillespie, The Thin Corporate Line: Loss of Limited Liability Protection, 45 ND L Rev 363, 372-73 (1969). See also Corrigan and Schirott, Piercing the Corporate Veil: Dispelling the Mists of Metaphor, 17 Tr Law Guide 121, 146 (1973); Douglas and Shanks, Insulation from Liability Through Subsidiary Corporations, 39 Yale L J 193, 196-97 (1929-1930); Hamilton, The Corporate Entity, 49 Tex L Rev 979, 992-94 (1971); Henn, Law of Corporations (Hornbook Series 1970) 256-59, §§ 147-48.

See also Annot., 38 ALR3d 1102 (1971), and Anderson, Limitations of Corporate Entity 349, § 366 (1931).

sidiary corporation was formed (or acquired) by its parent for the purpose of making the subsidiary an *agency* of the parent." (Emphasis added)

See also Annot., 38 ALR3d 1102, 1111 and 1116 (1972).[9]

In 2 Williston on Contracts (3d ed 1959) 182-83, § 274, it is stated that:

"In general no formality is necessary for the appointment of an agent to contract on behalf of his principal. 'There is no particular mode or method which must be adhered to in order to create or establish agency. Regardless of the terms used by the parties, or by what name the transaction is designated, if the facts fairly disclose that one party is acting for or representing another, by the latter's authority the agency exists.' "

and (at 187):

"Whether an agency has in fact been created is a question of law and is to be determined by the relations of the parties as they exist under their agreements or acts. If relations exist which will constitute an agency, it will be an agency whether the parties understood the exact nature of the relation or not. * * *"

---

[9] The following observations in Annot., 38 ALR3d 1102 (at 1111) are also of interest:

"Although in many of the cases the courts merely cumulate facts tending to show that the separate entity of the subsidiary and the corporate formality of transacting business through it has been disregarded, and then conclude that the subsidiary was or was not the 'mere agent, adjunct, or instrumentality' of its parent, other cases have developed one or more formal rules and theories, rarely, if ever, represented as exclusive in application, such as the alter ego theory, the identity theory, and the instrumentality rule, as well as the agency and estoppel theories. Although there is little difference in the thrust of the first three mentioned, such is not the case with the agency and estoppel theories. They involve principles of law well developed outside the field of disregard of corporate entity; moreover, application of either of those theories does not necessarily involve any disregard of entity."

Similarly, in *Young v. Neill et al,* 190 Or 161, 174, 220 P2d 89, 225 P2d 66 (1950), this court recognized the rule that:

> "An agency may be implied from attending circumstances and the apparent relations and conduct of the parties. * * *"

To the same effect, see *Pokorny v. Williams,* 199 Or 17, 40, 260 P2d 490 (1953); *Boise-Payette L. Co. v. Dominican Sisters,* 102 Or 314, 325, 202 P 554 (1921). Cf. *Briggs v. Morgan,* 262 Or 17, 23, 496 P2d 17 (1972).

In this case there was a letter proposal on the stationery of Industrial Covers, Inc., dated February 2, 1970, and a letter accepting that proposal, directed to Industrial Covers.

However, two of the answers filed or tendered on behalf of both defendants, "* * * admit that *they* sold to Plaintiff an air supported structure * * *." Although that admission may not have been binding as a judicial admission and although in its brief Sargent contended that it was an "inadvertent admission," that admission was included in two separate pleadings prepared by competent counsel. No showing of mistake or inadvertence was made at the time of trial.

In addition, there was evidence that all of the contacts by plaintiff both before and after the letters of February 2, 1970, were with Sargent; that Industrial Covers was not only a wholly owned subsidiary, but had no employees of its own, and that Sargent subsequently not only assured plaintiff that it would undertake the performance of the contract warranties, but actually undertook to perform at least some of the repair work, whether as "warranty work" or not.

In our opinion, this evidence was more than sufficient to support the judgment against Sargent.

This result is supported by decisions of other courts under similar, although not identical facts. See *Pacific Can Co. v. Hewes,* 95 F2d 42 (9th Cir 1938); *Herman v. Mobile Homes Corporation,* 317 Mich 233, 26 NW2d 757 (1947). See also *Baker v. Chock Full O'Nuts Corp.,* 30 App Div 2d 329, 292 NYS2d 58 (1968), and *New York Trust Co. v. Carpenter,* 250 F 668 (6th Cir 1918). See also Annot., 38 ALR3d, *supra* at 1116 and 1132. Cf. *Berger v. Columbia Broadcasting System, Inc.,* 453 F2d 991, 994 (5th Cir 1972), as cited by defendants.

3. *The instruction to the jury was not an "error of law apparent on the face of the record."*

■ As previously stated, defendant attempted in this case to assign as errors not only the denial of its motions for nonsuit and directed verdict, but also various rulings on evidence and instructions. The principal one of these was an attempt to assign as error the instruction to the jury to the effect that any verdict in favor of plaintiff must be against Sargent, as well as Industrial Covers. This would have raised not only the question whether there was substantial evidence to support a judgment against Sargent, but the further question whether such evidence was so clear and overwhelming as to impose liability upon Sargent as a matter of law, in the event that a verdict was returned against Industrial Covers.

This is not a case of an instruction with an obviously incorrect statement of the law, which would clearly constitute an "error of law apparent on the face of the record" for the purposes of Rule 6.18 of

our Rules of Procedure. On the contrary, any error in the giving of the instruction complained of in this case can be determined only by a reading and analysis of all of the testimony and exhibits. In addition, as also previously stated, the summary of the facts in appellant's brief was completely inadequate to satisfy the requirements of Rule 6.17.

Under these circumstances, we hold that any error in the giving of that instruction was not an "error apparent on the face of the record" for the purposes of Rule 6.18.

For all of these reasons, the judgment of the trial court is affirmed.