Argued October 8, affirmed November 12, 1959
# McREYNOLDS *v.* HOWLAND
346 P. 2d 127

*Bruce Spaulding,* Portland, argued the cause for appellants. On the brief were Huston, Thomas & Johnson, Corvallis, and Mautz, Souther, Spaulding, Denecke & Kinsey, Portland.

*Burl L. Green,* Portland, argued the cause for respondent. On the brief were Green, Richardson, Green & Griswold, Portland.

Before McALLISTER, Chief Justice, and PERRY, O'CONNELL and REDDING, Justices.

PERRY, J.

The plaintiff brought this action against the defendant to recover damages for personal injuries she received in an automobile accident. From a judgment for the plaintiff the defendant appeals.

The plaintiff, in company with several other young ladies, was a passenger in an automobile being driven by Joanne McDonald. This automobile was traveling north on Third street in the city of Corvallis. Third street is a one-way street, approximately 45 feet in width, and designated a through street. The defendant was traveling westerly on Harrison street. Third street is intersected by Harrison street and vehicles proposing to enter Third street from

Harrison street are required to stop before proceeding to enter that thoroughfare.

The evidence discloses that defendant stopped his automobile at the intersection and then proceeded into Third street to a point where his automobile struck the McDonald vehicle. The collision occurred in the southwest portion of the intersection.

The plaintiff's complaint charged the defendant with negligence in several particulars, among them being: Failure to maintain a proper lookout, failure to keep his vehicle under proper control, and that he was driving at an excessive speed under all of the attendant circumstances.

The defendant concedes there is sufficient evidence of failure to maintain a lookout to present a question of fact for the determination of the jury, but assigns as error the refusal of the trial court to grant his motion to withdraw from the consideration of the jury the allegations of negligence for failure to have his automobile under control and his excessive speed.

This contention of the defendant seems to be based upon the fact that he was moving at a very slow rate of speed as he entered into and proceeded across the intersection and there is no evidence but that he could have stopped or turned almost instantly to avoid colliding with the McDonald car. By this contention the defendant seems to say, "I might have been negligent in failing to maintain a proper or any lookout, but that does not indicate I was going too fast or did not have my car under control, and, therefore, since there is no evidence of excessive speed or failure to be able to stop or turn, it was error to permit the jury to speculate upon these issues."

It is, of course, true that the mere fact a collision occurred is not in itself evidence that a party failed to have his automobile under proper control. *Mead v. Portland Traction Co.,* 210 Or 643, 313 P2d 451; *Navarra v. Jones,* 178 Or 683, 169 P2d 584. And such an occurrence standing alone is not evidence of excessive speed. But in evaluating both speed and control the jury is entitled to take into consideration all of the attending circumstances then present and existing. ORS 483.102, known as the basic rule, is a law governing the speed of motor vehicles. It does not attempt to fix in miles per hour the maximum or minimum speed at which an automobile shall be driven upon any highway, but the circumstances then and there existing, some of them being described in the statute, determine whether or not the speed is lawful. *McMullen v. Robinson,* 211 Or 531, 316 P2d 503; *Rauw v. Huling and Sparks,* 199 Or 48, 259 P2d 99; *Burnett v. Weinstein,* 154 Or 308, 59 P2d 258.

One of the circumstances existing at this intersection of the streets in this case was the approach of the McDonald car. It then became relevant whether or not the defendant was negligent in moving his automobile at any speed across the intersection and particularly at such a speed as would cause it to come in contact with the MacDonald car. It is clear that a speed accompanied by a proper lookout might not be negligent, but driving at any speed without such lookout may be negligent.

The same is true regarding control, for control is also relative to the movement of the motor vehicle. While we have often said a car is "under control" within the meaning of the law if it is moving at such a rate, and the driver has the mechanism and power

under such control that it can be brought to a stop with a reasonable degree of celerity (*Quetschke Adm'x. v. Peterson and Zeller,* 198 Or 598, 258 P2d 128; *Spence, Adm'x. v. Rasmussen et al.,* 190 Or 662, 226 P2d 819; *Nolen v. Corvallis Auto Transit Co.,* 138 Or 98, 4 P2d 624), this definition does not attempt to limit control to the abstract proposition that an automobile is under control if the driver is able to stop within a given distance.

Mr. Justice ROSSMAN, speaking for the Court in *Nicholas v. Fennell,* 184 Or 541, 551, 554, 199 P2d 905, stated:

> "The duties of a motorist to drive at a reasonable rate of speed, to maintain an adequate lookout and to keep his car under control are interrelated and mutually dependent. Unless a change takes place in the other attendant circumstances, a variation of the rate of speed, normally, has a concurrent effect upon the duties of control and lookout. Likewise, a relaxation in control or lookout should be accompanied by a reduction in the rate of speed. The greater the speed, the less is the control; the less control, the more is the necessity for a sharp lookout.
>
> \* \* \* \* \*
>
> "If the plaintiff's lookout was relaxed—and a finding to that effect, in our opinion, was warranted—an inference was also warranted that his speed should have been reduced or that in some other manner he should have brought his car under greater control. \* \* \*"

In the instant case, on direct examination, the defendant testified as follows:

> "Q   And what did you do after the convoy passed?
> \* \* \* \* \*
>
> "A   I looked into the intersection and to the left.

\* \* \* \* \*

"Q When you looked to the left, what did you see?

"A I do not remember seeing any approaching vehicles. The view is unrestricted for approximately one hundred feet in the westerly most lane, \* \* \*."

On cross-examination the witness was referred by counsel to a deposition taken some time prior to the trial in which his version of lookout varied with that given on the stand. The questions propounded in the deposition were as follows:

"Q After the army convoy passed in front of you, did you look to your left before you started to cross the intersection?

"A I only remember that I looked into the intersection.

\* \* \* \* \*

"Q You don't recall whether you actually looked to your left or not?

"A I looked to see if it was clear, see if the intersection was clear.

"Q Well, the question I asked you is, do you recall whether or not you looked to your left of Third Street before starting into the intersection?

"A I can't be that specific. I looked into the intersection to see if it was clear."

Two riders in the McDonald car testified they saw defendant's car sixty and fifty feet respectively from the point of impact, yet he did not see them. The fact that the defendant did not see the McDonald car until it was approximately twenty feet to his left and the fact he failed to apply his brakes or swerve to avoid the collision entitled the jury to consider whether, under all the circumstances, the defendant's car was out of control and his speed excessive. *McMullen v.*

*Robinson,* supra; *Bailey v. Rhodes, Adm.,* 202 Or 511, 276 P2d 713.

■ The trial court was not in error in submitting the issue of defendant's negligence relative to speed and control to the jury.

Defendant's assignment of error No. III states the "Court erred in failing to sustain the objection of the defendant to that portion of plaintiff's Exhibit 'O' containing a diagnosis of herniated intervertebral disc as a part of the hospital record."

The defendant relies on *Lewis v. Woodland,* 101 Ohio App 442, 140 NE2d 322, which held the admission of a hospital record containing an x-ray diagnosis reciting the opinion of the Roentgenologist that the fracture disclosed was of recent origin was prejudicial to the defendant.

Since we are dealing with a particular statute, it is well to set forth the wording. The pertinent statute, ORS 41.690:

> "A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

The case of *Lewis v. Woodland,* supra, does not hold that the diagnosis in the hospital record was inadmissible, but only that an opinion as to the time of fracture was prejudicial and therefore inadmissible.

■ By the great weight of authority, those portions

of hospital records made in the regular course of business, and pertaining to the hospitalization, recording observable acts, transactions, occurrences or events incident to the treatment of a patient, are admissible as evidence of the facts therein recorded insofar as relevant to the issues involved, provided such records have been prepared, identified and authenticated in the manner specified in the statute itself. *Weis v. Weis,* 147 Ohio St. 416, 72 NE2d 245, 169 ALR 668; *Meiselman v. Crown Heights Hospital,* 285 NY 389, 34 NE2d 367; 14 S Cal LR 105. Such a hospital or physician's office report may properly include case history, diagnosis by one qualified to make it, condition, treatment, etc. 75 ALR 371; 6 Wigmore on Evidence (3rd ed) 36, § 1707. The record of examination of a patient on admission to hospital stating a diagnosis of cerebral hemorrhage was admitted in *Buckmumster's Estate v. Commr. of Int. Rev.,* 147 F2d 331. *Reed v. Order of United Commercial Travelers of America,* 2 Cir., 1941, 123 F2d 252, held a hospital record of an attending doctor's diagnosis of a patient's condition was admissible.

Many states, Oregon included, patterned legislation after "The Uniform Business Records as Evidence Act" adopted in 1936. (Ch 414, Or Laws, 1941, now ORS 41.690). The first case construing the statute held that the act applied to hospital records and such records were admissible in evidence when duly authenticated and relevant to the issues. *Natwick v. Moyer,* 177 Or 486, 163 P2d 936.

In *Gallagher v. Portland Traction Co.,* 181 Or 385, 182 P2d 354, cited in both briefs, the Court said at page 392:

"* * * An objection based upon notations in the hospital record of diagnoses of the plaintiff's

physical condition, if relevant, is not well taken. Reed v. Order of United Commercial Travelers, 2 Cir., 123 F.(2d) 252; McDowd v. Pig'n Whistle Corp., 26 Cal.(2d) 696, 160 P. (2d) 797. * * *"

The statements in the record were relevant in that they established the reason for the patient's admission to the hospital.

The admitting diagnosis does not establish the plaintiff's true condition, nor was it conclusive. This particular part of the record was signed by Dr. Frank B. Smith, the attending staff physician, who testified that in his initial examination of the patient he made "a tentative diagnosis of what we refer to as a ruptured or herniated disk of the lumbosacral joint, that is the last movable joint in the spine." The doctor was thoroughly cross-examined. Later, he reaffirmed his original diagnosis, saying, "I felt Barbara has clinical evidence and has shown clinical evidence of what we call a ruptured or herniated disc * * *."

■ Even if a conclusion could be drawn that this portion of the hospital record was improperly admitted, that portion of the record objected to was substantiated by Dr. Smith's testimony and an opportunity was afforded to cross-examine so that defendant was not prejudiced by its admission.

The judgement of the trial court is affirmed.