Argued May 2, affirmed July 31, 1963

# JAEGER *v.* ESTEP
### 384 P. 2d 175

*Gerald H. Robinson,* Portland, argued the cause for appellant. With him on the brief were Peterson, Lent & Paulson and Nels Peterson, Portland.

*Darrell L. Johnson,* Portland, argued the cause for respondent. With him on the brief were Pendergrass, Spackman, Bullivant & Wright, Portland, and Allan G. Carson, Salem.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

ROSSMAN, J.

This is an appeal by the plaintiff, Jacqueline C. Jaeger, from a judgment which the circuit court court entered in favor of the defendant, Merlin Estep, Jr. The judgment was based upon a verdict. The action out of which the challenged judgment arose charged that at noon on December 22, 1959, as the plaintiff was driving her automobile in a southerly direction along Cottage Street in Salem, approaching Court Street, the defendant who was driving his car in the same direction ran the front of his into collision with the rear of hers. According to the plaintiff, the collision occurred when she brought her car to a stop in order to permit a car coming from a parking place to her left to enter Cottage Street. The plaintiff charged the defendant with excessive speed, lack of control, failure to yield to the plaintiff the right of way, and failure to maintain a reasonably adequate

lookout. The answer denied all averments of negligence.

Cottage Street lies north and south. Court Street and another, which is one block to its north and which is known as Chemeketa Street, lie east and west. Those three thoroughfares are one-way streets. Traffic moves east on Court and west on Chemeketa. Its direction on Cottage is south. All three streets are level and are paved. December 22, 1959, was a bright, clear day. The collision occurred on Cottage Street at a point between Court and Chemeketa Streets. The distance between Court and Chemeketa is 375 feet. The distance between curbstones on Cottage Street is 59 feet. The place of the collision lies within a block or two of the central business district of Salem. The plaintiff placed the scene of the collision about two-thirds of the way from Chemeketa to Court Street. The defendant swore that he had traveled hardly one-third of that distance when the impact occurred.

Both the plaintiff and the defendant were proceeding southerly along Cottage Street. The plaintiff estimated the speed of her car as ten to fifteen miles per hour; the defendant made a similar estimate of his. The defendant thought that he was following the plaintiff's car at a distance of at least two car lengths; his words were:

"I am sure it was two car lengths, at least twice, twice the length of my car from the front of mine to the back of hers. * * * I would estimate around 35 feet."

Both cars were in the same lane on the east half of Cottage Street and each driver intended to turn to the left upon reaching Court Street.

Both the plaintiff and the defendant testified that

a car a short distance ahead of the plaintiff was entering Cottage Street from a parking place to the left. The plaintiff had seen it the moment it began to enter Cottage Street. The defendant saw it for only an instant prior to the impact. It was this car that caused the plaintiff to stop.

The defendant testified that while he was following the plaintiff he suddenly heard a loud screeching noise immediately to his rear and that upon looking into his rear view mirror saw a car rapidly overtaking him and then shortly make a sharp turn to the right so as to avoid striking his car. The four cars just mentioned are the only ones with which this case is concerned.

The plaintiff-appellant presents four assignments of error, each of which is based upon instructions given or refused.

The first assignment of error contends that error was committed when the trial juge instructed the jury that:

> "* * * a person who without negligence on his or her part is suddenly and unexpectedly confronted with peril arising from either the actual presence or the appearance of imminent danger to himself or herself is not expected nor required to use the same judgment and prudence that is required of him or her in the exercise of ordinary care in calmer and more deliberate moments * * *."

In challenging the instruction, the plaintiff argues:

> "The emergency doctrine does not apply where the defendant creates the emergency with his own negligence. * * * The operator of the following vehicle had the duty to anticipate minor distractions that may occur in traffic and sudden stops by the automobile ahead. * * * Where there is

no negligence charged against the plaintiff and where there is no evidence of negligence on the part of the plaintiff, it is reversible error for the trial court to charge the jury in such a way as to apply the sudden emergency doctrine to the plaintiff."

The plaintiff does not challenge the instruction as a correct statement of the law.

The plaintiff testified that she had come to a complete stop before the accident and had remained motionless for "between ten and fifteen seconds" before her car was struck by the defendant's. The defendant testified that he likewise was proceeding at about ten to fifteen miles per hour. He thought that he was at least 35 feet to the rear of the plaintiff. It is evident from the commonly used mileage table that if the plaintiff's car stood motionless for ten to fifteen seconds before it was struck and if, as the plaintiff testified, she had come slowly to a stop, the defendant was a material distance behind her as his car approached the scene of the collision. According to the plaintiff, before she stopped she glanced in her rear view mirror and saw no car approaching hers from behind except the one that it developed was the defendant's. She thought that it was "some distance" to her rear.

*Zwilling v. Harrison*, 269 NY 461, 199 NE 761, held that a proximity of 6½ feet behind another vehicle, where both vehicles were traveling at a rate of twelve to fourteen miles an hour on a city street, did not justify the conclusion that the driver of the car in the rear failed to exercise reasonable care.

Sportsmanlike Driving, 4th ed., by American Automobile Association, page 103, states: "Following distance: *Allow at least 1 car length between you and*

the car ahead for each 10 miles per hour of your speed."

ORS 483.312 provides that the car behind shall not follow "more closely than is reasonable and prudent * * *."

The above facts do not indicate that the defendant was following the plaintiff "more closely than is reasonable and prudent."

The plaintiff testified that after the impact both she and the defendant left their cars and talked to each other. At that time the defendant, so the plaintiff swore, stated: "I'm sorry. It's all my fault. I wasn't looking."

The defendant swore that after he had entered Cottage Street he saw the plaintiff's car ahead of him. Then, according to him, the following occurred:

"* * * There was a very loud screeching noise. It seems to me that I heard that before I saw them. * * * I had been looking at the car ahead of me; and I looked at this very intently through my rear-view mirror, and I became quite alarmed. * * *

*     *     *

"* * * I watched it very heavily through my mirror for I don't know, just a very short time; and it just seems to me like a very small fraction of a second. But, I watched long enough to know that it was, that it was gaining on me. I don't know how fast it was going, but it certainly was going faster than I was because it was gaining on me very rapidly.

*     *     *

"Right at that moment I don't know, but the screeching that I referred to a minute ago and I heard was it seems to me just a second or so before this and it was coming toward me very rapidly,

and then I saw him, I could tell that through my, this mirror. * * *

\* \* \*

"* * * that was a sharp turn, and then he did turn and by that time he was almost upon me, and then he turned out sharply to his right. * * *

\* \* \*

"* * * I had to, just a definite sensation that he was going to hit me; and then as he turned around here, there was more, more screeching and he, as he was about—

\* \* \*

"* * * and he actually, he was making right at that time a very sharp right turn. In fact, when I looked back, glanced at him, why, his car, it was my definite impression that his car was on two wheels because definitely as I glanced back, I got a glimpse of a good deal of the top of that car. * * * and at about that point, why, I looked forward and I saw Mrs. Jaeger's car.

\* \* \*

"* * * I saw her car and I, I realized that she had either stopped or was, was stopping. So, I realized I had to stop immediately; and when I first saw her car, gosh, I don't know how close it was. Actually, it is hard for me to estimate. It could be just one car—

\* \* \*

"* * * Anyway, I was very close. I did put my foot on the brake and wait for it to take hold and start, start to stop; and my car didn't stop soon enough and came into contact with the rear of Mrs. Jaeger's car * * *."

The defendant testified that after the impact he and the plaintiff had a short conversation in the course of which the plaintiff declared:

"* * * and the first thing that was said, Mrs. Jaeger said, 'I'm sorry. I didn't have any chance to signal,' and I, I said—she said, 'signal to stop,'

and she used the word 'signal.' And, I asked her something like, 'Are you hurt or are you all right?' I don't remember, remember whether she actually answered that question or not. Then she just repeated about the same thing that she had just finished saying except she gestured up the driveway there and said, 'He just kind of pulled in ahead of me, and I didn't have any chance to signal, that I was going, going to stop,' and I said, 'Gosh! It wouldn't have done any good anyway. I wasn't looking at you apparently when you started to stop. Apparently, I was looking back,' and then we looked at the cars a minute. She mentioned something else about this car coming out in front of her. I remember saying—"

The foregoing is the situation that determines this assignment of error.

The plaintiff cites *Lehr v. Gresham Berry Growers,* 231 Or 202, 372 P2d 488; and the defendant cites *Britton v. Jackson,* 226 Or 136, 359 P2d 429.

*Britton v. Jackson,* supra, states:

"Plaintiff assigns as error the refusal of the court to instruct the jury that the defendant Jackson was negligent as a matter of law in failing to keep a proper lookout and the giving of an instruction on the sudden emergency rule."

The decision ruled that "the driver of a motor vehicle must maintain such a lookout as a reasonably prudent person would maintain in the same or similar circumstances." It declared:

"The court gave the jury the standard instruction on the degree of care required by one faced with a sudden emergency not created by his own negligence. Plaintiff argues that the giving of this instruction was error because the emergency, if one existed, was caused by Jackson's own negligence in failing to keep a proper lookout. Since it

was for the jury to determine whether Jackson was negligent in failing to keep a proper lookout it was for the jury to determine whether the sudden emergency, if one existed, was created by Jackson's own negligence."

*Lehr v. Gresham Berry Growers,* supra, was not concerned with an instruction upon the emergency rule. It sustained a ruling which directed the jury to return its verdict for the plaintiff upon the issue of negligence. The defendant claimed that its driver saw the plaintiff give no signal before he brought his car to a stop. The stop occurred at an intersection which was protected by an overhead blinker light. The defendant's truck crashed into the rear of the car in which the plaintiff was riding as a passenger. The car in which the plaintiff was riding had stopped at the intersection. We take the following from the opinion:

"If two motor vehicles are proceeding in the same direction in the same lane of traffic and the following vehicle strikes the rear of the forward vehicle, in the absence of any other circumstances, reasonable minds could only conclude that the driver of the following car was guilty of failure to perform one or all of the duties placed upon drivers as above set out.

"The other circumstances which the defendants feel change the negligence picture is that the driver of the forward vehicle came to a sudden stop without giving proper warning to the car following."

The words, "one or all of the duties placed upon drivers as above set out," included (1) a duty not to "follow another vehicle more closely than is reasonable and prudent"; (2) not to drive "at a speed which is greater than will permit the driver to exercise proper control and * * * avoid colliding with any

person, vehicle \* \* \* entering the highway \* \* \*";
and (3) to maintain a proper lookout.

We quote further from the Lehr decision:

"There is no probative evidence that the driver
of the forward vehicle did not signal his intention
to stop. All the driver of defendants' truck stated
was that he did not see any signal given. The
driver's statement therefore has no probative value
under the facts of this case. Whether such evi-
dence has probative value or not depends 'upon the
opportunities which the witness possessed for mak-
ing observations. The testimony of a witness who
gave negative testimony because he did not observe
or was inattentive would amount to nothing. But
if he was in a position where he could observe, and
made diligent exercise of his faculties, his testi-
mony that the alleged event did not occur is not
negative but is, in fact, positive. Its value is de-
pendent upon his credibility and a comparison of
his opportunities for making observations with
that of the other witnesses. Wigmore on Evidence
(2d Ed.) § 664,' Lovett v. Gill, 142 Or. 534, 541,
20 P.2d 1070, 1072.

"There is no statement in the record from which
an inference could be drawn that the defendant wit-
ness was giving any attention to any signals given
or that might be given by the driver of the forward
car. \* \* \*"

It will be observed that in the case now at bar the
plaintiff, unlike the driver in the Lehr case, did not
bring her car to a stop at an intersection—let alone
one marked by a blinker light. Like the driver in the
Britton case, she stopped in the middle of the block.
Common experience teaches that it is peculiarly de-
sirable that one who stops his car between intersec-
tions should give a signal before so doing.

■ The defendant concedes that he saw the plain-
tiff's car as he followed it along Cottage Street. He

claims, however, that he was threatened by an emergency for which he was not responsible. If he spoke the truth—and the jury apparently believed him—a terrifying incident developed immediately to the rear of his car and the plaintiff, who was in front of him, stopped without giving a signal. If she had no time to give a signal, as she told the defendant, her stop was evidently abrupt. Testimony that the jury could properly believe indicates that the defendant was following her at a distance which was reasonable and safe. There is no evidence that the defendant was traveling at anything but a reasonable rate of speed. As in the Britton case, the issue of emergency was for the jury.

■ This assignment of error is without merit.

In presenting her second assignment of error the plaintiff failed to comply with Rule 19 of this court. That rule, as illustrated in Appendix B, page 35, Rules of the Supreme Court, requires a party who challenges an instruction that was given to the jury to quote the challenged instruction and the objection which he voiced to it in the trial court. In part, the words are: "* * * set out instruction and objection made thereto, both haec verba."

■ The purpose of the rule is to assure accuracy and to facilitate the prompt just determination of appeals. In her reply brief the plaintiff sought to correct the omission by quoting there the objection which she offered in the trial court. We think, however, that the assignment of error failed to set forth the entire instruction to which objection was made. At any rate, the part that was omitted from appellant's brief was necessary to an understanding of the part which the plaintiff attacked. Since counsel sought to make amends in the reply brief, we considered the assignment of error, but found no merit in it.

■ The third assignment of error reads:

"The Court erred in failing to give the following requested instruction:

" 'Plaintiff's Requested Instruction No. 1.

" 'You are instructed that the defendant Merlin Estep, Jr., was guilty of negligence as a matter of law in the operation of his motor vehicle at the time and place alleged in the plaintiff's complaint. You are further instructed that the negligent operation of said motor vehicle was the proximate cause of injuries to the plaintiff, Jacqueline C. Jaeger. Therefore, you are instructed that the only matter for your consideration is to determine the nature and extent of the plaintiff's injury and assess plaintiff's damage, general and special damages.' "

In support of the assignment of error the plaintiff argues:

"Where the defendant, driver of a following vehicle, incurs a minor traffic distraction and collides with the rear end of the stopped forward vehicle, defendant is guilty of negligence as a matter of law and the court should so instruct the jury."

The plaintiff cites *Lehr v. Gresham Berry Growers,* supra, and states that her contention "is largely based upon the facts and law presented heretofore, particularly in connection with Assignment of Error No. 1." Our disposition of the first assignment of error does not authorize a holding that the defendant "was guilty of neglect as a matter of law." The purported emergency which the jury possibly found was established by the evidence rendered impossible a directed verdict for the plaintiff.

■ The fourth assignment of error reads:

"The Court erred in giving the following instruction:

" 'The mere fact that an accident occurred or

that someone sustained injury or damage is not any indication of liability on anyone's part.'"

The plaintiff argues: "Under the facts of the case at bar, the negligence of the defendant was manifest and the mere occurrence of an accident under these circumstances raises a presumption of negligence." The plaintiff cites *Lehr v. Gresham Berry Growers*, supra.

We have complete confidence in the Lehr decision and no desire to weaken it or detract from it. However, in that case the rule of emergency was not considered nor was there any basis for applying it. In that case, after the plaintiff had made a regular stop at the marked crosswalk of an intersection, his car was struck in the rear by the defendant's. The intersection was protected by a blinker light which was in operation. There was also at the intersection a public schoolhouse with children who had come from it preparing to cross the street. Accordingly, the defendant, before crashing into the rear of the plaintiff's car, had notice that cars might stop at the intersection. No such facts are present in the case now before us. In the present case the plaintiff stopped her car—not at an intersection—but between intersections; and, in speaking to the defendant immediately after the impact, conceded that she had given no signal of her intention to stop. We find no merit in this assignment of error.

This case was ably and thoroughly tried. The instructions were fair and comprehensive. Those that are now challenged dealt with common matters of everyday understanding with which every juror gains some knowledge as he moves about the city.

The above disposes of all the assignments of error. The challenged judgment is affirmed.