Argued May 3, affirmed June 16, 1971

BALLARD, *Respondent, v.* RICKABAUGH
ORCHARDS, INC., *Appellant.*
485 P2d 1080

John M. Copenhaver, Judge.

*Charles R. Marsch,* Bend, argued the cause and filed briefs for appellant.

*R. L. Marceau,* Bend, argued the cause for respondent. With him on the brief were McKay, Panner, Johnson, Marceau & Karnopp, Bend.

Before McAllister, Presiding Justice, and Denecke, Holman, Tongue, Howell, and Bryson, Justices.

BRYSON, J.

This is an action by plaintiff to recover damages for personal injuries sustained when an automobile she was operating collided with a truck operated by defendant's employee. The accident occurred on Highway 97, south of Bend, Oregon.

The complaint alleges the defendant was negligent in the following respects: Parking its truck in the southbound lane of the highway when it was practicable to park the truck off the highway; in failing to leave an unobstructed width of sixteen feet of the highway opposite the truck for the use of plaintiff; in failing to place a flare or signal to warn drivers of southbound vehicles, and particularly plaintiff, of the approaching danger; and in parking the truck in the southbound lane of traffic immediately north of the crest of a hill, making it unsafe for plaintiff to pass to the left.

The answer charges plaintiff with contributory negligence in operating her vehicle with: Lack of control and lookout; excessive speed; failure to stop to

avoid the accident; and failure to pass to the left of defendant's vehicle. For a second further and separate answer, defendant alleged that plaintiff had the last clear chance to avoid the injury. The trial court withdrew this further defense from the jury and it is discussed later as one of defendant's assignments of error. The jury returned a verdict in favor of the plaintiff and assessed special and general damages. The defendant appeals.

1. Defendant's first assignment of error is that "the court erred in failing to grant defendant's motions for involuntary nonsuit and directed verdict." Both motions will be considered together, for when the defendant did not rest upon its motion for nonsuit and proceeded to produce evidence in support of its case, this court will review the trial court's ruling thereon and will consider the whole record in the same manner as when ruling on a court's failure to grant a motion for a directed verdict. *Gordon Creek Tree Farms v. Layne et al,* 230 Or 204, 218, 358 P2d 1062, *decided on the merits* 368 P2d 737 (1962).

2, 3. Defendant contends there was conclusive evidence of negligence on the part of plaintiff in failing to have proper control of her vehicle, failing to maintain a proper lookout, and in driving at an excessive speed under the circumstances. In considering this assignment, the evidence must be viewed in the light most favorable to plaintiff and she must be accorded the benefit of every reasonable inference and intendment which may be drawn therefrom. *French v. Christner,* 173 Or 158, 135 P2d 464, *decided on the merits* 143 P2d 674 (1944). Unless it can be said that plaintiff's alleged contributory negligence was established so clearly, conclusively and unequivocably that

all reasonable minds could not differ on the matter, the issue was properly submitted to the jury. *Shelton v. Lowell et al.*, 196 Or 430, 249 P2d 958 (1952); *Murphy v. Hawthorne*, 117 Or 319, 244 P 79 (1926).

When viewed favorably to the plaintiff, the evidence establishes the following facts: On the morning of November 12, 1968, plaintiff was driving southbound on U. S. Highway 97 from her home in Bend, Oregon, to her place of employment some seventeen miles distant. It had snowed the night before, and the day of the accident remained cold and stormy. Plaintiff's automobile was equipped with studded snow tires, but the road conditions were slippery and became more difficult as she traveled south. As plaintiff ascended a portion of the highway known as the Lava Butte grade the snow on the highway became like "packed ice." All witnesses agreed that the driving conditions that morning were extremely treacherous. At the top of the Lava Butte grade the highway curves slightly to the west around Lava Butte. Thereafter, the road is straight and quite level for a distance of some 2,000 feet with the southern portion of this section of the highway ascending slightly to the crest of a hill.

Plaintiff testified that when she was in the mid-point of the straight section of the highway she observed defendant's truck, a "tractor and semi," 60 feet or 65 feet in length, preceding her south, in the same direction she was traveling. The truck had no lights showing (this was weakly disputed by the truck driver), there were no flags, flares, or warning signals of any kind, and no one was moving about the truck. At this time plaintiff's speed was approximately 25 miles per hour.

The evidence shows that the driver had actually stopped the truck to remove tire chains he had put on in order to climb the Lava Butte grade, and he had chosen to remain on the highway rather than pull off onto nearby turnouts, including one directly alongside the parked truck on the right, or west, side of the highway.

It was not until plaintiff had approached to within approximately 400 feet of the truck that she realized that "the truck was completely stopped * * * in the middle of my lane of traffic" and knew that she was in a dangerous situation. Plaintiff testified as follows:

"I started pumping my brakes and then I went out into the left lane of traffic [northbound], thinking that I could pass him, and I could see the crest of the hill and I didn't think that I could make it around him safely so I thought I would pull back in and try for that parking area beside the highway."

In turning her car toward the "parking area" her car lost traction on the icy road and slid into the rear portion of defendant's truck. Plaintiff sustained serious permanent injuries.

A disinterested witness, Mrs. Hennen, had a similar experience with the truck shortly before plaintiff's accident. Mrs. Hennen had driven south on Highway 97 and saw the truck in the roadway. She also testified there were no lights or warning signals visible and no one in view in the vicinity of the truck. She further testified:

"Q [Plaintiff's counsel] At some point as you traveled up that road did you become aware that the truck was not moving?

"A When I first saw him I thought he was

moving slowly because of the—the roads were slick. I didn't—I was practically on top of him before I realized that he was stopped * * *.
"* * * * *.

"Q What did you do?
"A I got scared. And I swung out around him. I—for an instant I considered the right-hand turn-out. And I don't know why I went the other way, I just did. But all the time I was going around him I was thinking if there was someone else coming, I've had it.

"Q You mean—
"A Because I couldn't see down the road.
"* * * * *.

"Q About what speed were you going when you came down the straightaway there towards the truck?
"A Approximately thirty, thirty-five.

"Q Had you swayed or slid or been out of control up to that point?
"A No * * *.
"* * * * *."

There is no evidence plaintiff's vehicle was out of control prior to the time that she attempted to drive to the parking area beside the highway.

4. The mere fact that a collision occurred does not, in itself, establish that plaintiff failed to keep her automobile under control nor does it establish that she was driving at an excessive speed. *McReynolds v. Howland,* 218 Or 566, 346 P2d 127 (1959).

5. Under the foregoing set of facts, the question of plaintiff's contributory negligence was for the jury to decide and the court did not err in refusing defendant's motions for nonsuit and a directed verdict.

6. The second assignment of error is the trial court's giving an instruction on the so-called "emergency doctrine." Defendant contends that no emergency existed in fact, or, if it did, it was brought about by plaintiff's negligence. The trial court could well have concluded that the situation and testimony on road conditions required plaintiff to exercise quick judgment as to which course to follow. *Frangos v. Edmunds,* 179 Or 577, 173 P2d 596 (1946). *See also Fenton v. Aleshire,* 238 Or 24, 393 P2d 217 (1964); *Jaeger v. Estep,* 235 Or 212, 384 P2d 175 (1963). In the recent case of *Evans v. General Telephone,* 257 Or 460, 479 P2d 747 (1971), we held:

> "In the past we have been equivocal about when an instruction on sudden emergency should be given. Ainsworth v. Deutschman, 251 Or 596, 466 P2d 187 (1968) [Citing cases]. In effect, we have held that it is not error to give it in certain cases, but it would be a rare situation, indeed, where it would be error to fail to give it * * *." (Where applicable under the facts.)

While an emergency instruction is an instruction which is unnecessary to give and should be avoided, we do not believe its use in this case was prejudicial.

7. The third assignment of error is the trial court's refusal to give the defendant's requested instruction on the doctrine of last clear chance. The requested instruction is as follows:

> "I instruct you that if you believe that defendant was negligent and thereafter the plaintiff discovered that she was in a position of peril and had an opportunity by the exercise of reasonable care and prudence to save herself and avoid the accident, it was her duty to do so and if she failed to do so that failure would be the immediate proximate cause of the injury to the plaintiff and in that

event plaintiff cannot recover. That is what is called "The Last Clear Chance.'"

Plaintiff relies primarily on *Rew v. Dorn,* 160 Or 368, 85 P2d 1031 (1938). *Rew v. Dorn, supra,* has been severely criticized in an article by Professor James, 19 Or L Rev 178 (1940). *See also, Lindsey v. Southern Pacific Co.,* 240 Or 11, 14, 399 P2d 152 (1965).

In the pure classic example for the application of the last clear chance doctrine, the *plaintiff* admits his negligence or is found to be negligent and says that notwithstanding his negligence and because of his discovered peril, the defendant has the last clear chance to avert the accident. *See Niday v. Tomasini,* 240 Or 589, 591, 403 P2d 704 (1965). *See also* dissenting opinion in *Lindsey v. Southern Pacific Co., supra* at 25-26.

This is an appropriate occasion to unclutter the law of Oregon and overrule *Rew v. Dorn,* 160 Or 368, 85 P2d 1031 (1938), to the extent that it holds that the doctrine of last clear chance can be invoked by the defendant. We so hold.

An attempt by the defendant to invoke last clear chance is in part repetitious of invoking contributory negligence as a defense and last clear chance is less favorable to the defendant than contributory negligence. This case illustrates the repetition and the advantage to the defendant of contributory negligence over last clear chance. The court did not err in refusing to give the defendant's requested instruction.

8, 9. The last assignment of error is directed at the trial court's adding "any person who violates this provision is guilty of negligence as a matter of law" to the statutory instruction regulating the parking of vehicles on highways. Defendant contends that "the

same was covered in the definition of statutory negligence and that it unduly impresses upon the jury the fact that it would be negligence as a matter of law." The court first instructed the jury in the language of instruction No. 10.03 of the Oregon Jury Instructions for Civil Cases as follows:

"In addition to common law negligence there is also statutory negligence, which consists of the violation of a law which, for safety or protection of others, requires certain acts or conduct, or forbids certain acts or conduct. Where I call your attention to any such law, a violation of such law is negligence in and of itself."

The court subsequently gave the jury uniform instruction No. 70.01 on the basic speed rule, containing the substance of ORS 483.102 (1) and (2), and then concluded his instructions on the statutes with the law regulating the parking of vehicles on highways, ORS 483.362 (1), concluding that instruction with the statement: "Any person who violated this provision is guilty of negligence as a matter of law."

Although the sentence of which the defendant complains is repetitious of the earlier instruction, mere repetition does not demand reversal unless the repetitious matter is misleading in character or gives undue prominence to the phase of the controversy. *Sine v. Mehlhorn,* 168 Or 688, 126 P2d 853 (1942); *Bronkey v. Olson,* 145 Or 662, 28 P2d 243 (1934). It is not claimed that the instruction was misleading, and we are of the opinion that it did not give undue prominence to any special phase of the controversy.

The judgment is affirmed.