345 A.2d 605

**COMMONWEALTH of Pennsylvania**

**v.**

**Marlo DIGIACOMO, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 8, 1974.

Decided Oct. 3, 1975.

450

John J. Dean, Stephen P. Swem, Pittsburgh, for appellant.

John J. Hickton, Dist. Atty., Robert L. Eberhardt, Louis R. Paulick, Asst. Dist. Attys., John M. Tighe, First Asst. Dist. Atty., Pittsburgh, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

NIX, Justice.

This direct appeal from a conviction of murder in the second degree results from an altercation which occurred in a tavern in Allegheny County during which the proprietor was fatally shot in the back seven or eight times by appellant. Appellant presses two assignments of error to justify the reversal of the judgment of sentence and the grant of a new trial. We do not agree and now affirm.

On October 28, 1974, appellant, Mario DiGiacomo, and his friend, John Hruska, went to the "Some Place Else" Tavern owned by Raymond Anderson, the victim. During the course of the evening, a fight erupted between Hruska and Anderson. In the sequence of events which followed, appellant fired the shots which caused Anderson's death. At trial, appellant admitted causing the death of Anderson but asserted that he fired the shots in an effort to protect his friend, Hruska, from serious bodily injury. The first assignment of error charges that the Commonwealth improperly prevented Hruska from testifying and thereby denied appellant his Sixth Amendment Right to Compulsory Process.

█ Is is unquestioned that our Federal Constitution assures the right of an accused to be provided with an adequate opportunity to present his version of the incident to the trier of fact. *Washington v. Texas*, 388 U.S. 14, 18, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *In Re Oliver*, 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948).

██ In recognition of this right, this Court has required the Commonwealth to advise the defense of, and to make available to the defense is possible, all known eyewitnesses, *Commonwealth v. Jones*, 452 Pa. 569, 308 A.2d 598 (1973); *Commonwealth v. Gray*, 441 Pa. 91,

271 A.2d 486 (1970); *Commonwealth v. Carter*, 427 Pa. 53, 233 A.2d 284 (1967). We have however held that the Commonwealth has no duty to call as its witness an eyewitness if there is reason to believe, after examination or investigation, that the testimony of that witness would be unreliable or unworthy of belief. *Commonwealth v. Horn*, 395 Pa. 585, 150 A.2d 872 (1959); *Commonwealth v. Palermo*, 368 Pa. 28, 81 A.2d 540 (1951).

Here the existence of the witness, Hruska, the knowledge possessed by him concerning the fateful events, and his whereabouts were known to the defense. The alleged violation of the Sixth Amendment in the instant appeal is the allegation that the Commonwealth improperly intimidated the witness and caused him to elect to invoke his Fifth Amendment privilege and thereby made him unavailable as a defense witness. If the record bore out these contentions, there would be substantial merit in appellant's position. Cf. *Webb v. Texas*, 409 U.S. 95, 93 S. Ct. 351, 34 L.Ed.2d 330 (1972); *United States v. Smith*, 156 U.S.App.D.C. 66, 478 F.2d 976 (1973).

The witness, Hruska, was subpoenaed by both the prosecution and the defense. The Commonwealth advised the court that it would not call Mr. Hruska as a witness because they were of the view that he was not worthy of belief. The Commonwealth concedes that during its trial preparation Mr. Hruska was interviewed. During that interview, Mr. Hruska was advised that evidence from other eyewitnesses strongly suggested that he might well have been an accessory to this crime. He was also advised of his right against self-incrimination. At some point after this interview, Mr. Hruska communicated to the defense his intention to invoke his Fifth Amendment privilege if he was called as a witness in the matter.

Although appellant alleged threats and intimidation, there is no evidence of what transpired during the pre-trial conference between the prosecutor and Mr. Hruska beyond that conceded by the Commonwealth and

set forth above. Interestingly, there was no effort on the part of the defense to introduce additional evidence which would support their claim that the witness had been coerced to remain silent.[1] See *Commonwealth v. Sistrunk*, 460 Pa. 655, 334 A.2d 280 (1975).

We do not believe under the facts of this case that the conduct of the prosecutor was improper or that he violated the Sixth Amendment rights of appellant. First, it is significant that the prosecutor did in fact have evidence from other sources which would tend to establish Mr. Hruska's criminal involvement in this murder. Secondly, there was no evidence to suggest that the decision to prosecute would depend upon whether his version of the event was favorable to the defense or the Commonwealth. The mere advising of one individual of his rights where there is a justifiable occasion for doing so, does not in turn infringe upon the constitutional rights of another even though the election to exercise those rights may deprive the other of a possible advantage in his defense. Here, there was a proper occasion for advising Mr. Hruska of the possible consequences of his testimony and thus the fact that he subsequently elected to invoke his privilege if called as a witness was not an impermissible infringement upon appellant's constitutional rights.

The appellant's reliance on *Webb v. Texas, supra* is clearly misplaced. In that case the trial judge gratuitously singled out the only defense witness and proceeded to admonish him as to the possible punishment for perjury. As a result of these remarks the witness refused to testify. That Court properly concluded that the selection of this particular witness, the excessively strong admonition, and the unwarranted assumption that this

---

1. The fact that Mr. Hruska may have properly invoked his Fifth Amendment privilege to avoid questions concerning the shooting did not prevent him from being called to establish that he had been intimated or threatened by the Commonwealth.

witness intended to lie, violated defendant's right to due process in that it "effectively drove witness off the stand." Here, where the occasion for the admonition was obvious and its nature was not that of a threat, there is no basis for finding a parallel with the facts in *Webb, supra.*

▪ In his brief, appellant alludes to a more serious problem concerning the prosecutor's reference, during summation, to the failure of the defense to call Mr. Hruska, the appellant's friend, and the prosecutor's suggestion thereby that this omission would justify an inference that if called, the witness would have testified adversely to appellant's position. While defense counsel objected to these remarks when they were made, the objection to the propriety of the remarks and suggested inference was not properly preserved on post-trial motions and accordingly it is waived. *Commonwealth v. Bronaugh,* 459 Pa. 634, 331 A.2d 171 (1975); *Commonwealth v. Reid,* 458 Pa. 357, 326 A.2d 267 (1974); *Commonwealth v. Goodman,* 454 Pa. 358, 311 A.2d 652 (1973).

Appellant's second and final argument concerns the trial judge's refusal to permit the introduction of certain hospital records where the doctor who made the records was unavailable to testify. The records were permitted to prove the fact of hospitalization and the duration of the hospital stay, but not to show diagnosis or medical opinion. Appellant asserts that they were admissible to show Mr. Hruska's injuries as well.

▪ The law is clear that hospital records are admissible to show the fact of hospitalization, treatment prescribed, and symptoms given. Act of May 4, 1939, P.L. 42, No. 35, § 2, 28 P.S. § 91b; *Commonwealth v. Mobley,* 450 Pa. 431, 201 A.2d 622 (1973); *Platt v. John Hancock Mutual Life Insurance Co.,* 361 Pa. 652, 66 A.2d 266 (1949). Medical opinion contained in the records

and proffered as expert testimony is not admissible however where the doctor is not available for cross-examination. See *Jones Appeal*, 449 Pa. 543, 297 A.2d 117 (1972). Here, appellant attempted to have the custodian of records testify as to the admitting diagnosis of the injuries sustained. Such testimony is in the nature of expert opinion testimony and accordingly was properly excluded. See, generally, *McCormick, Handbook of the Law of Evidence*, 732 (2d ed. 1972).

Judgment of sentence affirmed.

ROBERTS and POMEROY, JJ., filed concurring opinions.

MANDERINO, J., concurs in the result.

ROBERTS, Justice (concurring).

Because I cannot agree with the majority's assertion that diagnoses contained in hospital records are never admissible under the business records exception to the hearsay rule, I cannot join in the opinion of the Court.

Appellant was charged with the murder of Raymond Anderson. At trial, appellant admitted he fired the fatal shot but asserted the homicide was justifiable because done to protect the life of a friend who was being beaten by the deceased. In order to demonstrate that his friend's life was truly endangered, appellant sought to introduce into evidence hospital records. These showed that, following the fracas, the friend was admitted to a hospital. They also contained the treating physician's diagnosis of the friend's injuries. Although appellant recognized that these records were hearsay, he maintained they were admissible under the business records exception statutorily created by the Act of May 4, 1939, P.L. 42, § 2, 28 P.S. § 91b (1958).[1]

---

1. Section 91b provides:
   "A record of an act, condition or event shall, in so far as relevant, be competent evidence if the custodian or other qualified

The trial court admitted the records only in so far as they proved the fact of the friend's hospitalization and the duration of his stay in the hospital. It refused to admit that part of the record that contained the diagnosis of the physician who treated the friend.

The majority today breezily affirms the trial court's ruling, concluding that hospital records are admissible only to show the fact of hospitalization, treatment prescribed and symptoms given. It asserts, moreover, because the physician's diagnosis is opinion evidence, it is not admissible where the physician is not available to testify.[2]

In my view, the majority's resolution of this issue is inconsistent with the rationale underlying the business and professional records exception to the hearsay rule. McCormick gives the following reasons for the exception:

"The exception is justified on grounds analogous to those underlying other exceptions to the hearsay rule. Unusual reliability is regarded as furnished by the fact that in practice regular entries have a comparatively high degree of accuracy (as compared to other memoranda) because such books and records are customarily checked as to correctness by systematic balance-striking, because the very regularity and continuity of the records is calculated to train the record-keeper in habits of precision, and because in actual ex-

witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

2.  To be sure, there is some support in the cases for the majority's holding. See, e. g., *Commonwealth v. Mobley*, 450 Pa. 431, 301 A.2d 622 (1973); *Platt v. John Hancock Mut. Life Ins. Co.*, 361 Pa. 652, 66 A.2d 266 (1949); see generally *Commonwealth v. McCloud*, 457 Pa. 310, 322 A.2d 653 (1973) (admission of autopsy report offered by prosecution in a murder trial violates confrontation clause). The statute itself is silent on this point.

There is apparently no question that the record otherwise met all the requirements of the act.

perience the entire business of the nation and many other activities constantly function in reliance upon entries of this kind."

McCormick's Handbook of the Law of Evidence § 306, at 720 (2d ed. E. Cleary, 1972). Wigmore finds that the fact that hospital records are "made and relied upon in affairs of life and death" renders them especially reliable. VI Wigmore, Evidence § 1707, at 36 (3d ed. 1940).

The physician's diagnosis is probably the most important element in the hospital record in determining what treatment is necessary to preserve the patient's life and health. It would seem, therefore, that the reliability of the diagnosis is sufficiently safeguarded to allow its admission even where there is no opportunity for the non-offering party to cross-examine the recording physician. Cf. *Commonwealth v. Harris*, 351 Pa. 325, 41 A.2d 688 (1945).

Furthermore, I question the efficacy of cross-examination to uncover discrepancies in the physician's diagnois. As Professor Wigmore has recognized,

"[a]midst the day-to-day details of sources of hospital cases, the physicians and nurses can ordinarily recall from actual memory few or none of the specific data entered; they themselves rely upon the record of their own action; hence to call them to the stand would ordinarily add little or nothing to the information furnished by the record alone. The occasional errors and omissions, occurring in the routine work of a large staff, are no more an obstacle to the general trustworthiness of such records than are the errors of witnesses on the stand."

Wigmore, supra. See generally, 4 Weinstein's Evidence, ¶ 803(6)[04] (1975); but see McCormick, supra, § 313.

Finally, although the use of the record deprives the non-offering party of the opportunity to explore the physician's qualifications, the fact that the diagnostician is a

physician on the staff of a hospital assures at least minimal qualifications. The fact that no greater competence is indicated by the record can be adequately communicated to the jury.

However, even assuming that there may be some danger in admitting diagnoses without cross-examination of the recording physician,[3] this does not dictate that all records containing diagnoses must be excluded from evidence. Judge Weinstein reports that "most federal courts reached an accommodation between the need for relevant information and the fear of uncross-examined opinion. They drew a distinction between diagnoses involving 'conjecture and opinion' and diagnoses upon which 'competent physicians would not differ.'" 4 Weinstein's Evidence, ¶ 803(b)[04] at 803–158 (1975). Records containing diagnoses tending toward the former

---

**3.** The arguments for and against the admission of diagnoses in hospital records are cogently summarized by Judge Weinstein:

"Those who objected to admission of records containing diagnoses argued that the 'difference between a "fact" . . . and an "opinion" is one of the fundamental differences in the law of evidence;' that 'under the traditional rules of evidence, a witness must be shown to be qualified before he is permitted to give an expert opinion;' that the accuracy of the opinion cannot be evaluated without the safeguard of cross-examination; and that the jury would be so impressed by the opinion that even subsequent rebuttal could not overcome the initial reaction.

"By contrast, proponents of the admissibility of medical records containing diagnostic opinions stressed the need for such evidence and the accuracy of such records on which '[h]uman life will often depend.' They contend 'that if it is proven or judicially noticed that the hospital from which the records come is a reputable institution of high standards this would justify the inference that what purports to be diagnoses made by physicians are made by doctors duly qualified to give such opinions,' and they pointed out that the adversary 'may himself call the declarant and thus bring out, if he can, any weaknesses of the diagnosis.' In addition, failure to call the doctor may permit an opponent a field day in showing 'shortcomings' in the procedures used which might have been readily explained if the doctor who prepared the report was present; there is a self-limiting feature that minimized abuse."

4 Weinstein's Evidence ¶ 803(b)[04] at 803–156–58 (1975) (footnotes omitted).

were excluded, those tending toward the latter were not.[4] McCormick finds a similar development in several state courts. McCormick, supra, § 313. A sample of cases in which other jurisdictions have held that, at least in some situations, diagnoses are admissible include *Thomas v. Hogan*, 308 F.2d 355 (4th Cir. 1962); *Bailey v. Tennessee Coal, Iron & RR. Co.*, 261 Ala. 526, 75 So.2d 117 (1954); *Tyron v. Casey*, Kan.App., 416 S.W.2d 252 (1967); *Brown v. St. Paul City Ry. Co.*, 241 Minn. 15, 62 N.W.2d 688 (1954) (dictum); *Allen v. St. Louis*, 365 Mo. 677, 285 S.W.2d 663 (1956); *Weis v. Weis*, 147 Ohio St. 416, 72 N.E.2d 245 (1947) (dictum); *McReynolds v. Howland*, 218 Or. 566, 346 P.2d 127 (1969); *Travis Life Insurance Co. v. Rodriguez*, 326 S.W.2d 256 (Tex.Ct.Civ. App.1959); *Joseph v. W. H. Groves Latter Day Saints Hospital*, 7 Utah 2d 39, 318 P.2d 330 (1957); *Noland v. Mutual of Omaha Insurance Co.*, 57 Wis.2d 633, 205 N. W.2d 388 (1963).

On the basis of these authorities, I cannot agree that a prohibition on the admission of all hospital records containing diagnoses is necessary. However, I need not determine in what circumstances diagnoses should be ad-

4. Fed.R.Evid. 803(6) not permits the admission of diagnoses whether they are routine or speculative. The rule, however, permits the trial court to exclude a particular record where indications of trustworthiness are lacking. The rule permits admission of:

> "A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or cirumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

Pub.L. No. 93–595 (Jan. 2, 1975), 2 U.S.Code, Cong. & Admin. News, pp. 2236–2237.

missible or whether in the present case the report in question was admissible. In my view, the exclusion of the report if it were error, was harmless.

As stated previously, appellant sought to have admitted the hospital record to show that his friend had been badly beaten by the deceased. Although the trial court refused to admit the part of the record containing the physician's diagnosis, it did permit the admission of the part of the record indicating that the friend had to be hospitalized as a result of the struggle and that he remained thereafter in the hospital for two months. From this evidence, the jury must have realized that the deceased had inflicted an awful beating on appellant's friend. The evidence describing the exact nature of the friend's injuries which was contained in the physician's diagnosis would have virtually no additional effect on the jury in light of other testimony about the beating. I am therefore convinced beyond a reasonable doubt that had the excluded evidence been admitted, it would have had no effect upon the judgment. Thus the error was harmless.

POMEROY, Justice (concurring).

Largely for the reasons set forth in the concurring opinion of Mr. Justice ROBERTS, I am of the opinion that diagnoses contained in hospital records may be admitted under the Business Records Act, Act of May 4, 1939, P.L. 42, § 2, 28 P.S. § 91b. I join in the Court's affirmance of appellant's conviction because I, too, believe that the error involved in the trial court's refusal to admit the hospital records in question for the purpose of showing diagnoses of the patient's injuries was harmless. I add this statement for the purpose of pointing out that, under the terms of the Business Records Act, a record is admissible "if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission." Thus, the trial judge has

discretion in deciding whether business records are admitted into evidence, and his decision is reviewable only for an abuse of that discretion. The trial judge in this case, however, did not purport to exercise this discretion, but rather limited the admission of the hospital records because he believed them to be *per se* inadmissible for diagnostic purposes. In my view this was error, albeit harmless error.