**PennDOT v. Graham**

C.P. of Butler County, no. 99-40041.

*Jeffrey L. Giltenboth,* for Commonwealth.

*Alexander H. Lindsay Jr.,* for defendant.

HORAN, *J.,* June 4, 1999—Before the court for consideration is motorist's license suspension appeal from the Commonwealth of Pennsylvania Department of Transportation's notice of suspension under 75 Pa.C.S.

§1547(b) for refusal to submit to chemical testing. Hearing on this appeal was held on May 4, 1995. For the reasons which follow, said appeal is dismissed.

The pertinent facts of the case are as follows:

On January 1, 1999, Officer Randall Davison of the Middlesex Township Police Department was dispatched to a single vehicle accident along Route 228 east. He observed the appellant, Eric Wesley Graham, strapped to a backboard and being prepared by paramedics for transportation to the Butler Memorial Hospital. He made several observations about the accident scene and appellant at that time. Officer Davison noticed that the accident vehicle was laying on its driver's side in the opposite direction from which it had traveled. He observed several injuries to appellant's head as well as some scrape wounds. Officer Davison could also smell the odor of alcohol on appellant's breath. Appellant informed Officer Davison that he had been driving too fast and had lost control of his vehicle.

Officer Davison requested appellant to submit to a breath test. Appellant initially stated that he would not take the test, then he stated that he would. He then stated for a second time that he would not take the test, then he stated again that he would. Appellant attempted to blow into a portable breathalyzer machine but was incapable of giving a sufficient breath sample. Officer Davison considered appellant's conduct to be a refusal because he gave an insufficient breath sample.

Officer Davison accompanied appellant when he was transported to the Butler County Memorial Hospital. He observed that appellant appeared to be in pain even

though he could speak fine. After they arrived at the hospital, Officer Davison read appellant the chemical test warnings and requested him to submit to a blood alcohol test. Appellant refused to take a blood alcohol test. Officer Davison warned appellant that if he refused to submit to the test it would cause him to lose his license for one year. Appellant responded that he refused to say anything. He also wrote "refused" on the chemical test warnings form and stated "I ain't signing nothing." Appellant testified that he was given pain medication while he was in the hospital. He was later released from the hospital to his niece.

Appellant's niece transported him to his brother's house. Appellant's brother, Barry Graham, observed that he was in intense pain upon their arrival. Appellant informed his brother that he was in pain and having trouble breathing. Mr. Barry Graham testified that he felt his brother should never have been released from the Butler County Memorial Hospital. He immediately drove appellant to Allegheny General Hospital for further evaluation. Mr. Barry Graham kept trying to speak to appellant while en route to the hospital. However, when appellant responded, he made no sense. Appellant was placed in the hospital's trauma unit for four days with a diagnosis of internal injuries, including a collapsed lung.

Appellant filed this appeal from an order of PennDOT suspending his driver's license and supersedeas and argues that he did not knowingly refuse to submit to a chemical test because he had a significant head injury at the time. He also argues that his failure to respond to officer Davison's request to submit to a blood alcohol test suggests that he was in a somewhat confused state.

PennDOT argues that appellant did not establish that he was not capable of making a knowing and conscious refusal to submit to a blood alcohol test. He did not present medical testimony as is required where his injuries were not severe, incapacitating and obvious. PennDOT also argues that appellant's hospital records and testimony do not meet his burden in this case.

The sole issue currently before the court is whether or not appellant was capable of making a knowing and conscious refusal to submit to a blood alcohol test under 75 Pa.C.S. §1547(b). We find, after a review of relevant Pennsylvania law and the facts in the case that appellant was capable of making a knowing and conscious refusal to submit to a blood alcohol test.

PennDOT's burden for establishing when a motorist's operating privilege may be suspended for refusing to submit to a chemical test is well settled:

"A motorist's operating privilege may be suspended as a result of a refusal to submit to a chemical test if the department establishes: (1) that the motorist was arrested by an officer who had reasonable grounds to believe that the motorist was driving while intoxicated; (2) that the motorist was requested to submit to a chemical test; (3) that he was informed that a refusal to submit to such testing would result in a suspension of his operating privileges; and (4) that he refused to submit to the test. . . . Once the department has proven that the motorist failed to submit to the chemical test, the burden then shifts to the motorist to prove by competent medical evidence that he was not capable of making a knowing and conscious refusal. . . . However, whether a motorist's refusal is

knowing and conscious is a factual determination to be made by the trial court, which cannot be overturned on appeal if based on substantial evidence." *Gordon v. PennDOT,* 707 A.2d 1195, 1197 (Pa. Commw. 1998) (citations omitted); see also, *Ostermeyer v. PennDOT,* 703 A.2d 1075, 1077 (Pa. Commw. 1997); *Marinaro v. PennDOT,* 703 A.2d 1066, 1067-68 (Pa. Commw. 1997).

Officer Davison had reasonable grounds to believe appellant was driving while intoxicated based on certain observations he made of the appellant and of the accident scene. He could smell the odor of alcohol on appellant's person when he arrived at the accident scene. He read appellant the chemical test warnings at the hospital. Officer Davison then requested appellant to submit to a blood alcohol test. Appellant refused to submit to a blood alcohol test. He was further informed that a refusal to submit to a blood alcohol test would result in a suspension of his operating privileges for one year. Appellant responded that he refused to say anything. Thus, PennDOT has proven that appellant failed to submit to a blood alcohol test.

Next, it is appellant's burden to establish that he was not capable of making a knowing and conscious refusal to submit to a blood alcohol test. A driver's mental and physical state are important factors to be considered in determining whether a driver made a knowing and conscious refusal to submit to a blood alcohol or an intoxilyzer test. *PennDOT v. Day,* 93 Pa. Commw. 49, 500 A.2d 214 (1985). The nature and extent of the driver's injuries are important considerations when addressing this issue. *Id.*

We find appellant presented no evidence to establish that he was suffering from a physical impairment that rendered him incapable of making a knowing and conscious refusal to submit to a blood alcohol test. Appellant did not complain of any injuries at any time to Officer Davison even though he observed some injuries to appellant's head and some scrape wounds. Appellant did not appear to be in pain and he was able to talk with Officer Davison. The hospital records contain a notation of a head injury. Appellant made no complaint of a headache. There was no significant treatment related to a head injury. Thus, appellant presented no credible nonmedical evidence to prove he was suffering from a physical impairment such that he was not capable of making a knowing and conscious refusal to submit to a blood alcohol test.

In regards to appellant's mental state, Officer Davison spoke with appellant at the accident scene. Although appellant appeared indecisive at first as to whether he would submit to a breath test, he subsequently agreed to do so. Appellant informed Officer Davison that he had been driving too fast and had lost control of his vehicle. Officer Davison spoke with appellant again at the Butler County Memorial Hospital. Officer Davison read appellant the chemical test warnings and requested him to submit to a blood alcohol test, which he subsequently refused. Appellant appeared capable of understanding the chemical test warnings. Officer Davison warned appellant that if he refused to submit to the test it would cause him to lose his license for one year. Appellant responded that he refused to say anything. We find that appellant

exhibited an ability to speak clearly and respond appropriately when he conversed with Officer Davison. Thus, with the exception of some early disorientation at the scene of the accident, there is no evidence of disorientation or confusion to explain any incapacity to consciously or knowingly refuse to submit to a blood alcohol test. The appellant presented insufficient nonmedical evidence to prove he was suffering from a mental impairment such that he was not capable of making a knowing and conscious refusal to submit to a blood alcohol test.

Appellant testified that he could not recall either meeting Officer Davison on the night of his accident or speaking with him at all. However, he testified that he did remember being scared. It is well established that a motorist's assertion of physical incapacity without any supportive medical evidence is insufficient to meet the required burden of proof in a license suspension appeal hearing. See *Day, supra.* Similarly, in *Waigand v. Commonwealth,* 68 Pa. Commw. 541, 542, 449 A.2d 862, 863 (1982), the appellant argued that he did not make a knowing and conscious refusal to submit to a breathalyzer test because he could remember nothing between the time when he was in a bar with his friends one day and when he woke up in jail the next day. The court held the appellant in the *Waigand, supra,* case failed to present sufficient evidence to support his allegations of incapacity, where the arresting officer testified that appellant appeared "cognizant." *Id.* Therefore, in the present case, we find appellant's assertion that he has no memory of ever speaking to Officer Davison to be insufficient evidence of incapacity in light of the officer's testimony.

Appellant cites to *PennDOT v. Day, supra,* in support of his position of incapacity. The facts presented in the *Day* case are inapposite to the situation in the case at bar. In *Day,* the Pennsylvania Commonwealth Court found that a driver can establish that a refusal to submit to a blood-alcohol examination was not conscious and knowing, without medical testimony to establish a connection between the injuries sustained and the refusal to take the test. The driver in *Day* suffered multiple injuries that included a broken jaw, an injured leg, and blows to the back of the head. These physical injuries caused the driver to suffer from rambling speech, confusion, and at times, a total loss of memory. As such, the condition of the driver was severe, incapacitating and obvious such that medical testimony was not required.

In the present case, although the appellant's injuries were serious, their effect upon his ability to make a knowing and conscious refusal was not incapacitating, severe or obvious. Thus, medical evidence of incapacity is necessary.

Appellant argues that his hospital records are admissible hearsay pursuant to the Uniform Business Records as Evidence Act and as a statement made for the purpose of medical diagnosis or treatment. Certain components of appellant's hospital records constitute inadmissible hearsay. Hearsay can be "defined as in-court evidence of an out-of-court declaration, whether oral or written, which is offered to show the truth of the out-of-court assertion." *Rafter v. Raymark Industries Inc.,* 429 Pa. Super. 360, 365, 632 A.2d 897, 899 (1993). Pennsylva-

nia law does not include opinions and diagnoses within records of regularly conducted activity. See comment to Pa.R.Evid. 803(6). However, hospital records are admissible as evidence to show the fact of hospitalization; treatment prescribed, and symptoms given. *Commonwealth v. DiGiacomo,* 463 Pa. 449, 455, 345 A.2d 605, 608 (1975). A medical opinion contained within records and offered by one party through expert testimony is not admissible where the doctor is not available for cross-examination. Appellant offered no expert medical testimony. Appellant referred to his hospital records during testimony. The medical diagnoses contained in the records are not admissible under the Uniform Business Records as Evidence Act or as a statement made for the purpose of medical diagnosis or treatment.

Based upon the testimony elicited at the proceedings, appellant refused to submit to a blood alcohol test in violation of the implied consent law (75 Pa.C.S. §1547(b)). Notwithstanding the testimony by appellant that he was not capable of making a knowing or conscious refusal, his testimony is not as believable as that of the police officer. The appellant presented no expert medical testimony to support that he was not capable of making a knowing and conscious refusal. Thus, the appellant has not met his burden in this case. The actions of appellant indicate a conscious and knowing refusal to submit to a blood alcohol test. Hence, the suspension of his operating privileges was proper. This appeal from that suspension lacks merit.

Accordingly, we enter the following:

## ORDER

And now, June 4, 1999, after due consideration of record and in accordance with the foregoing memorandum opinion, motorist Eric Wesley Graham's license suspension appeal is dismissed.